GEO. W. BECK et al. v. MARSDEN BELLAMY, Ex'r, et al.

*Attorney and Client—Excusable Negligence—Judgment—Setting Aside—New Trial—Judge, Discretion of—Appeal.*

1. A new trial can be granted only at the term at which the trial was had. The Code, § 412.

2. The power of the courts to set aside judgments on the ground of "surprise, inadvertence, mistake or excusable neglect," is confined to those cases specifically mentioned in the statute, and does not embrace such as necessarily follow the verdict, and the vacating of which, without disturbing the verdict, would be of no advantage to the party.

3. While the Supreme Court has jurisdiction, on appeal, to determine what constitutes "mistake, inadvertence, surprise or excusable neglect," under § 274 of The Code, it has no authority to review or interfere with exercise of the discretion vested in the Judge of the Superior Court by that section, *in refusing to set aside judgments.*

4. But should the Judge set aside a judgment upon a state of facts which did not bring the case within the scope of the statute, his action would be subject to correction on appeal.

5. The remedy against a judgment procured by the fraudulent collusion of opposing counsel, is by an independent action to impeach the judgment.

6. A party to an action is bound by every act of his attorney, done without fraud or collusion, in the regular course of practice in the conduct of the cause, however injudicious the act may be.

(*England* v. *Duckworth*, 75 N. C., 309; *Hudgins* v. *White*, 65 N. C., 393; *Foley* v. *Blank*, 92 N. C., 476; *Greenlee* v. *McDowell*, 4 Ired. Eq., 485, cited and approved).

This was a motion to set aside a judgment, heard before *Gudger, Judge,* at Spring term, 1885, of NEW HANOVER Superior Court.

The motion being denied, the plaintiffs appealed.

At Fall Term, 1884, of the Superior Court of New Hanover, upon an issue of *devisavit vel non* submitted to the jury, the script purporting to be the will of Thomas Beck and propounded for probate as such by the executor therein named, to which a caveat had been entered by George W. Beck and the other brothers and sisters and next of kin of the deceased, a verdict was rendered declaring it to be his will, and judgment entered, remanding the case

and the finding of the jury to the probate court for further proceedings.

At the ensuing term of the Superior Court, upon an an affidadavit filed by some of the caveators on behalf of all, stating the grounds thereof, they moved the Court to set aside said judgment and relieve them therefrom under §274 of The Code.

The case transmitted with the record to this Court is as follows:

Motion to set aside a judgment rendered in this case at Fall Term, 1884, of said Court. The following are the facts upon which the action of the Court is based, refusing to set aside the judgment in said case.

That Thomas Beck died on Tuesday, 20th of November, 1883, at Wilmington, N. C., having first made and executed a last will and testament, bequeathing and devising all his property to one Frances Mitchell, and having appointed therein Marsden Bellamy, Esq., as his executor; that Thomas Beck died without having wife or children, and Frances Mitchell is a woman of color. Thomas Beck was a white man.

Said will was admitted to probate in the proper court of New Hanover county, on the 22d day of November, 1883, in common form, and letters testamentary issued to the said Bellamy.

That afterwards on the 22d August, 1884, a caveat was filed by the plaintiffs in this motion, who are the brothers and sisters of said Thomas Beck, and an issue was made up, to try whether the said paper writing was or was not the last will and testament of said Beck, and Messrs. Russell & Ricaud, of Wilmington, N. C., and Sebastian Brown, Esq., of Baltimore, were retained as counsel to test the validity of said will.

That at Fall Term, 1884, of New Hanover Superior Court the case was set for trial on Monday, 9th December, 1884, and said Brown was duly informed thereof as early as December 6th.

It was suggested in the letter of Russell & Ricaud, of December 2d, to the said Brown, that owing to older cases, the day for hearing might be changed. On December 4th, Russell & Ricaud

informed the said Brown, counsel in Baltimore of the plaintiffs, that they had filed the caveat in the hope that a case might be developed or a compromise effected, but after examination of all parties in a situation to know, they discovered no testimony to stand upon in court, and no witnesses at all, and that they could effect no compromise.   These letters were received by the said Brown on or before December 6th.

That neither Brown nor any of the plaintiffs attended the Court during its session of Fall Term, 1884, nor did they furnish any evidence whatever, or give the names of any witnesses to Messrs. Russell and Ricaud; that said cause was not tried on the 9th December, but was put to the end of the calendar, and was pressed for trial at a later day of the term, and was tried during said term, and a verdict and judgment rendered sustaining said will; that Messrs. Russell and Ricaud were not furnished with any witnesses nor evidence of any kind with which to contest the validity of said will; that on the 18th of December, Russell and Ricaud wrote Brown informing him that the case had been tried, and they found themselves entirely without evidence, not even a scintilla, and from the beginning they had never been able to show the slightest circumstance against the will, except the color of Frances Mitchell; that after various efforts to compromise with defendants' counsel, Messrs. Russell and Ricaud agreed that the plaintiffs might call their witness and they, Russell and Ricaud, would cross-examine, and if they could find no defence, the defendants might have a verdict, for that they, Russell and Ricaud, had no witnesses, and knew of no human being who could prove one fact, however trifling, in their (Russell and Ricaud's) favor, and that they came to this agreement in consideration of defendants' paying the bill of Mr. Beck (one of the caveators), for $322.50, of which amount they, Russell and Ricaud, said not more than $100 could be collected.   (This bill was for burial expenses).

The will was executed on the 19th day of June, 1882.

The plaintiffs are non-residents, being residents of Baltimore, Md.

That Thomas Beck died on the night of November 20th, 1883, having been in apparent good health until a few hours before his death; that as soon as his illness was known, a physician, Dr. Love, was sent for, but he did not arrive till after the death of the testator.

That said physician made a *post mortem* examination of the remains, and gave as his opinion that the said Thomas Beck died of heart disease. That information of the testator's death was on the same night telegraphed to one of his brothers in Baltimore.

That accordingly said cause was tried, and the verdict and judgment rendered as above set forth.

That none of the plaintiffs nor their counsel Brown, of Baltimore, gave the names of any witnesses, nor any evidence to the said Russell & Ricaud, to enable them to contest in any way the said will, nor did any of them attend the trial, nor the term of the court at which said cause was tried, and that Messrs. Russell & Ricaud used all reasonable diligence to discover evidence with which to contest said will.

*Mr. Thomas W. Strange*, for the plaintiff.
*Messrs. Geo. Davis* and *Marsden Bellamy*, for the defendants.

SMITH, C. J., (after stating the case as above). It is difficult to discover in the facts ascertained and established at the hearing, any evidence, or indication even, of "mistake, inadvertence, surprise or excusable neglect," the statutory condition for the exercise of the invoked power, either in the verdict or rendition of judgment. Both were the result of deliberation and fully understood by caveators' counsel and entered under the supervision of the Court, in a proceeding *in rem*, where it is the duty of the Judge to see that everything is regularly and properly done in establishing the testamentary paper.

But the act in conferring power, confines its exercise to judg-ments rendered under the specified conditions, and does not embrace such as necessarily follow the verdict, and the setting aside of which, without at the same time disturbing the verdict, would be of no advantage to the party, for it must again be en-tered in conformity to the jury findings.    To vacate both is nec-essary to afford the desired relief, and this would be to grant a new trial, which can only be done at the term when it took place. The Code, § 412, par. 4; *England* v. *Duckworth,* 75 N. C., 309.

But assuming the remedy sought to be appropriate, the refusal of the Judge in the exercise of an admitted discretion, is not the subject of appellate revision.

In *Hudgins* v. *White,* 65 N. C., 393, READE, J., says: "After hearing the evidence and finding the facts, it is discretionary with the Judge to set aside the judgment or not, and *from the exercise of his discretion there is no appeal."*

This is said in a case where the Judge below refused to vacate, while it is manifest if he had done so, upon facts which did not bring the case within the scope and meaning of the act, his ruling would have been erroneous and open to correction on appeal.

Somewhat similar language is used by BYNUM, J., who says that "under the section of the C. C. P. cited (133), the applica-tion was addressed to the discretion of the Court and his decision thereon was final, whether refusing or allowing the motion."

In a more recent opinion, MERRIMON, J., thus re-asserts the same proposition: "This Court has authority to determine what constitutes 'mistake, inadvertence, surprise or excusable neglect,' under The Code, §274; but it has no authority to review or interfere with the discretion exercised by the Judge of the Supe-rior Court under this section."    *Foley* v. *Blank,* 92 N. C., 476.

But the complaint preferred in the application, and supported by oath, rests upon an imputed mismanagement of caveators' own counsel, and their want of authority to assent to what was done.    This is not sustained by the facts, for they show that resistance was not made, only because there were no grounds upon

which it could be offered, and would have been unavailing, if offered. If there had been fraud alleged in the agreement of opposing counsel, (and this the appellants disclaim, and say they impute nothing wrong to their counsel in conducting the defence), the redress would have been open only in an action to impeach the judgment of the Court. Still, the conduct of the case by caveators' counsel would, in the absence of connivance, be binding upon their clients, and it would be a dangerous innovation in judicial proceedings to hold otherwise.

In the words of NASH, J., in reference to the authority of counsel retained in a case : " By his acts and agreement made in the management of the cause, the plaintiff was bound." *Green-lee* v. *McDowell*, 4 Ired. Eq., 485.

Not less explicit is the language of MERRIMON, J., in *Brock* v. *Walker*, 92 N. C., 89, where he says of an attorney that " as soon as he is duly retained in an action or proceeding, he has, by virtue of his office *authority to manage and control the conduct of the action*, on the part of his client during its progress, and subject to the supervision of the Court," &c.

"As between the client and opposite party, the former is bound by every act which the attorney does in the regular course of practice, and without fraud or collusion, however injudicious the act may be." Weeks on Att., §222, and cases cited.

The ruling of the Court must remain. There is no error.

No error.                                    Affirmed.