SOUTHERN CHEMICAL COMPANY v. J. C. BASS AND J. A. ADAMS.

(Filed 24 April, 1918.)

**1. Attorney and Client—Judgment—Consent.**

Where an action upon contract and also in tort for embezzlement is alleged, it is within the scope of the employment of the attorney for the defendant to consent to a judgment upon the contract alone, excluding that upon the tort.

**2. Same—Partnership.**

Where a member of defendant partnership consents that judgment be entered against the firm in open court, through their attorneys, the consent is that of a partner, rather than that of the attorney, and is binding upon the defendant firm.

**3. Same—Burden of Proof.**

Where consent judgment has been entered against a defendant partnership in open court, in the presence of a member of the firm representing it, the burden of proof is on the other partner, absent at the time, to show the lack of authority of the attorneys to consent thereto, on his motion to set it aside upon that ground, the law presuming that such authority existed.

**4. Judgment—Consent—Partnership—Motion to Set Aside—Laches.**

A member of a partnership against which a consent judgment has been entered in open court, in his absence with the approval of another member of the firm, is charged with knowledge thereof, and his motion to set it aside will be barred by his laches in failing to act thereon, in this case for over seven years.

WALKER, J., concurring.

MOTION by defendants to set aside judgment, heard by *Shaw, J.,* at January Term, 1918, of FORSYTH.

The court found the facts and rendered judgment as follows:

"1. That the defendants were personally served with process by the sheriff of Surry County and that they were represented in the litigation by Watson, Buxton & Watson as counsel, who filed answer in their behalf to the complaint of the plaintiff.

"2. That when the case was called for trial in the Superior Court of Forsyth County, C. B. Watson, of counsel for the defendants, in the presence of the defendant J. C. Bass stated in open court that if plaintiff would waive the charge of fraudulent misappropriation of the moneys and property of the plaintiff, as alleged in the complaint, that the defendants would agree to allow judgment to be entered for the amount of the debt as alleged in the complaint; that plaintiff accepted this proposition and judgment was entered as appears of record.

"2½. That defendant Adams was not present when judgment was taken, and there is no sufficient evidence that he agreed to same or had any notice that said judgment had been taken until the fall of 1917. That the defendant Bass was the active manager of the defense and consented to said judgment, and in no view of the case was there any fraud in procuring said judgment. The court further finds that said debt has not been paid off and discharged before judgment was entered, as the court is satisfied from the high character and ability of counsel representing defendants that they would not have permitted judgment upon a discharged debt to be taken against their client.

"3. That the judgment as appears of record was prepared by C. B. Watson, of counsel for defendants, and was signed in open court by his honor Judge B. F. Long, who was the judge presiding at May Term, 1910, of the Superior Court of Forsyth County.

"4. That said judgment in June, 1910, was transcripted and docketed in the Superior Court of Surry County, and that execution was issued thereon in July, 1910.

"5. That since the entry of said judgment and prior to the filing of the motion in this cause by the defendants both C. B. Watson and J. C. Buxton have died.

"6. That subsequent to the entry of this judgment and the transcripting of same to the Superior Court docket of Surry County all of the property and effects of the Southern Chemical Company, including this judgment, was purchased by the Virginia-Carolina Chemical Company without notice of any of the things alleged by the defendants in this motion, and this company is now the holder and owner of said judgment for value; that the Southern Chemical Company has been dissolved and its assets have been distributed amongst its stockholders and it is no longer in business.

"Upon the foregoing findings of fact, and upon motion of Louis M. Swink and Manly, Hendren & Womble, attorneys for the Virginia-Carolina Chemical Company, it is ordered and adjudged that this motion be dismissed and that the defendants be taxed with the costs by the clerk of this court."

The defendants appealed.

*Louis M. Swink and Fred S. Hutchins for plaintiff.*
*Raymond G. Parker and T. W. Kallam for defendant.*

BROWN, J. It follows as a matter of course that the judgment cannot be set aside as to defendant Bass, as he was present in court and personally consented to it.

We are also of opinion that the court properly refused to set it aside as to Adams.

1. Adams and Bass were copartners and had employed most reputable counsel to conduct their defense. The copartner Bass was entrusted by the firm with the management of the action. The complaint alleged a cause of action in contract, a simple indebtedness, and another cause of action in tort, embezzlement and willful misappropriation of plaintiff's property by the copartnership.

When the case was called for trial the counsel for defendants permitted judgment to be entered for the debt, the allegation of embezzlement having been withdrawn. The managing partner being present in court, consented to this.

It was well within the scope of counsel's authority to consent to such a disposition of the case in their client's interest. Doubtless those experienced attorneys felt they could successfully meet the charge of embezzlement, but could not defeat the debt. *Hairston v. Garwood,* 123 N. C., 345.

But consenting to the judgment was not really the act of counsel, but that of the managing partner, who was present directing their action and that is binding on Adams.

2. The burden of proof was on Adams to satisfy the judge that he did not consent to the judgment, and he has failed to offer sufficient evidence.

The law presumes the attorneys had the necessary authority and the burden is on the ·party seeking to set aside a consent judgment to prove that no such authority existed. *Gardiner v. May,* 172 N. C., 192.

3. The defendants have been guilty of great laches in making their motion. The judgment was rendered in May, 1910. The summons was served personally on both partners. It is claimed by Adams that he did not know of the rendition of the judgment until 1917. He knew of the pendency of the action and that his partner was supervising and attending to its defense. He is guilty of laches in not inquring as to its disposition. He is charged with such knowledge as an inquiry would have disclosed. He cannot be permitted to wait nearly eight years and then say that he did not know that his suit had ended in a judgment against him. Besides, as his partner was acting for the firm, he is charged with such knowledge as his partner had.

Affirmed. ·

WALKER, J., concurring: The conclusion of the Court is, in my opinion, correct, but the reference to *Hairston v. Garwood,* 123 N. C., 345, in the connection it is placed, may seem to go beyond what that case decides. There the defendant asked to set aside the judgment as being irregular and as taken on account of his excusable neglect. The presiding judge merely held that it was not irregular, and refused to set it aside, and that ruling was affirmed on appeal, but the learned justice who wrote the opinion of this Court said: "If the judgment had shown upon its face that it had been entered as the result of a compromise made by the *attorney,* and that the judgment had been entered by his consent, the question would be a very different one from the one presented by this record. That question is not before us, and we need not discuss it. On the subject, however, the case of *Moye v. Cogdell,* 69 N. C., at p. 95, may be read with interest." In *Moye v. Cogdell, supra, the* Court held as shown by the headnote, that "An attorney cannot compromise his client's case without special authority to do so, nor can he, without such

authority, receive in payment of a debt due his client anything except the legal currency of the country or bills which pass as money at their par value by the common consent of the community. A subsequent ratification of the acts of the attorney is equivalent to a special authority previously granted to do those acts, but it must be the ratification of the client himself and not of his agent." See *Cox v. Boyden,* 167 N. C., 320; *Lance v. Russell,* 157 N. C., 448.

There is a presumption that an attorney has the requisite power to act where a judgment is taken against his client (*Gardner v. May,* 172 N. C., 192), for having the apparent authority, the law will not presume that he has committed a wrong and acted without the actual authority. We said in *Harrill v. R. R.,* 144 N. C., 543: "The counsel who signed the case agreed in behalf of the defendant was actually its attorney at the time, and representing it in this case at the term of the court when the case was settled. He had, apparently, all the authority necessary to act in the premises, and because he failed to observe special private instructions as to the manner of defending the suit is no reason in our opinion, under the circumstances of this case, why the judgment should be set aside, as he appeared to be clothed with general authority to act for the defendant. *Greenlee v. McDowell,* 39 N. C., 485; *Branch v. Walker,* 92 N. C., 89; *Beck v. Bellamy,* 93 N. C., 129; Weeks on Attorneys, sec. 222; *Rogers v. McKenzie,* 81 N. C., 164." And this authority to act for his client extends to and embraces all things done within the scope of his authority, as held in *Westhall v. Hoyle,* 141 N. C., 337. The presumption that he has acted within the limit of his authority will be indulged, even where he agrees to a compromise or settlement of his client's interests, in the absence of evidence to the contrary.

In this case there was previous consent by the clients to what was done. The firm was represented by one of the copartners, who was clothed with full power to act in the matter for the partnership and, of course, his consent, which was given to the attorneys, clothing the latter with the necessary authority to act, as they did, in agreeing to the judgment.

So that, however derived, the power existed, and the action of the attorneys was fully justified.

I am rather inclined to the opinion that in this case the attorneys were exercising their ordinary authority in the course of the litigation, and not surrendering, sacrificing, or even compromising any right of their client. It was a chance between evils, or the selection of chances, and they properly chose the lesser of the two in the one case, and the less hazardous of the two in the other, by eliminating the fraud, which was the dangerous element, and letting judgment go by default for the debt, as it does not appear that their client had any real or meritorious de-

fense to the cause of action for the same, and if he had, the attorneys do not seem to have been informed of it. They were merely serving their client by exercising their judgment and professional skill in his behalf and in furtherance of what they deemed to be his best interests, as was done in *Harrill v. R. R., supra.* It would seem that defendants have been tardy in asserting their claim. They were a long time finding out that they had been wronged, and were guilty of such laches as should bar their present application for relief.