ROBERT MERRITT ET AL. VS. ROBERT J. CLOW — Writ of Error from Washington County.

A judgment entered by agreement in the district court, pending a writ of error, that the petition be dismissed *nunc pro tunc*, will not be revised by the supreme court.

An authority will be presumed when an attorney appears for a party against whom no writ has issued; yet, if the defendant prove that he had no author-

ity, his rights will not be prejudiced by the attorney's acts, and an unauthorized confession of judgment by him will be set aside. [8 Tex. 36.]

The record of a judgment purporting to be by confession of the attorney at law and in fact of the defendant, prior to the act of 1846, p. 393, sec. 116, though no power of attorney is found of record, is *prima facie* evidence of the truth of its contents, and establishes *prima facie* that the attorney was duly authorized to confess judgment. [23 Tex. 104; 26 Tex. 84.]

A judgment by confession and upon compromise is a waiver of all previous errors. [1 Tex. 635; 4 Tex. 373; 9 Tex. 495; 13 Tex. 36; 22 Tex. 276.]

Robert J. Clow, the defendant in error, filed his petition in the district court, alleging that he was the surviving partner of a mercantile firm, then lately in business, under the [583] name of Merritt & Clow. That upon the death of his partner, Martin, Samuel Patterson, who is made defendant, had possessed himself of the partnership effects, and had been and was wrongfully disposing of and converting them to his own use, to the damage of the plaintiff twenty thousand dollars. He alleges, also, a loss of credit consequent upon the illegal acts of the defendant, to his further damage five thousand dollars.

Process issued, and property was attached; upon which, on the 22d day of May, 1840, Patterson entered into a replevy bond in the sum of thirty-six hundred and thirty-eight dollars (the alleged valuation of the goods then in his possession), with Joseph H. Wood and Richard R. Peebles as his sureties. Subsequently, having been ordered to give additional security on the 20th day of March, 1841, he renewed his bond, with Gordon, Farral, White and Merritt as sureties. Some time after, upon a suggestion of the death of Patterson, Merritt, by consent, was made defendant to the suit.

At the fall term, 1843, by what is termed in the record an "interlocutory decree," the defendant, Merritt, was adjudged to pay the plaintiff the sum of three thousand five hundred and thirty dollars and fourteen cents, with interest; and the matters not embraced therein, and unsettled, were referred to a commissioner for his report upon them.

At the October term, 1844, by what is called a "final decree," it was adjudged that the plaintiff recover of the defendant, Merritt, six thousand nine hundred and nine dollars and

fifty-six cents, in addition to the sum formerly adjudged to the plaintiff.  Subsequently, at the same term, a final judgment, by consent and agreement, was entered as follows:

"And on this day came the complainant, Robert J. Clow, in his own proper person, and the said Robert Merritt, Joseph H. Wood, Richard R. Peebles, Jesse Farral and Hardin White, securities for said Samuel Patterson, by their attorney and agent Josiah J. Crosby, Esq., one of the attorneys [584] of this court, and agreed and consented to the following:

"That the said parties of the second part, the said Merritt, Wood, Peebles, Farral and White, shall pay to said complainant, Robert J. Clow, the sum of twenty-five hundred dollars in cash on or before the 1st day of December next; and the sum of eighteen hundred dollars by the first of December, 1845, bearing interest at the rate of eight per cent. from this date. And it is further agreed, that in satisfaction of the last payment, said Clow shall admit all legal and just claims in the hands of said parties of the second part against the said firm of Martin & Clow, provided it does not exceed eight hundred dollars; but should it be over that amount, to be retained by said parties of the second part as a subsisting claim in their hands, and should any dispute arise as to the legality or justice of said claims, they are to be referred to a referee chosen by each party, with the privilege of selecting an umpire, whose decision shall be final. And upon the compliance of the parties of the second part to and with this agreement, then it shall operate as a full acquittance and discharge of both the interlocutory and final decree rendered in the said case, and annul all the rights the complainant has therein, or which he may have under any sale made under the interlocutory decree; and should it become necessary to enforce this agreement by an execution, the same shall issue for a peremptory sale, without appraisement, and defendants to pay the costs in the case of complainant against said Samuel Patterson and others expended.  It is therefore ordered and decreed that a judgment be and is hereby entered in accordance with the said agreement now consented to, and admitted in open court by the parties aforesaid."

In the vacation, after this compromise and confession of judgment, the defendants therein — the present plaintiffs in error — petitioned the judge for a rehearing and a perpetual injunction of this judgment, representing that the attorney, Crosby, had never been empowered by them to act as their attorney in the premises; that the judgment had been rendered [585] against them without their consent or knowledge, and that it was otherwise illegal. The judge awarded the injunction; but, on motion, upon the coming in of Clow's answer, denying all the equity set up in the petition, and alleging that the attorney had acted in the premises with the authority and assent of all the complainants, the injunction was dissolved, but, on motion, the petition was continued over for final hearing. Before the next term of the court, in May following, this writ of error was obtained for the purpose of bringing up the proceedings in the original cause, and upon the petition for a review and injunction. At the fall term thereafter, 1845, the parties entered into an agreement, in which, after reciting the substance of the proceedings of the previous spring term, and the suing out of the writ of error from the order of the court dissolving the injunction and that the petition for review and an injunction, " through mistake, was ordered to stand over as an original bill for a further hearing, when, in fact, they say the dismissal of said supersedeas and injunction did operate, in effect, as a dismissal of said bill." They agree that " the said decree, dismissing said injunction and supersedeas, did, in effect, dismiss said complainant's bill, and that the entry thereof be so amended, *nunc pro tunc*, as to show that said bill was dismissed."

*Allen* and *Webb*, for plaintiffs in error.

*Gillespie*, for defendant in error.

Mr. Justice WHEELER delivered the opinion of the court, Mr. Justice LIPSCOMB not sitting, having been of counsel below.

Our inquiries will relate to:

1st. The proceedings upon the petition for a review and injunction; and

2d. The legality and validity of the judgment sought to be enjoined.

1. The alleged absence of any authority in the attorney, [586] Crosby, to represent the parties and to compromise and confess judgment against them, was relied on by the complainants as the foundation of their right to relief. The answer negatived this averment, and denied all the circumstances upon which their equity was founded. The injunction was dissolved, therefore, of course.

But it was the privilege of the complainants, notwithstanding the dissolution of the injunction, to have conducted the cause to a hearing upon evidence touching the truth of the matters set forth in their petition (5 Stat. 1841, p. 83, sec. 3), and, upon making out their case by proof, the injunction must have been made perpetual. If, then, in point of fact, the merits of the case were with the complainants upon their application, their remedy was adequate and complete, had they chosen to pursue it.

And the conclusion adopted by agreement of the parties, that the dissolution of the injunction did, in effect and of necessity, dismiss the petition, is an assumption of fact and of doctrine wholly unwarranted. It had no such effect. On the contrary, the order of the court thereupon retaining the petition " as an original bill," and continuing it over for hearing, was regular and legal. Id. Of this the parties seem not to have been ignorant; for it appears that, " *on motion*, the said bill was retained as an original bill," and that said Clow was ordered to " enter into bond to refund the money collected, as the law directs." And the bond here contemplated was accordingly executed, conditioned to refund the money collected, " should the same be eventually decreed against him."

The parties, therefore, must have been aware that the order dissolving the injunction was but an interlocutory order, which could have no bearing upon the final disposition of the case. Their subsequent agreement could not change the fact; and it will scarcely be maintained that by it they either did or could repeal the statute and create a law of their own for the case, paramount to the law of the land.

[587] A writ of error had been sued out, and, as suggested at the bar, it may have been apprehended by the complainants that a final judgment dismissing the petition was necessary to give this court jurisdiction of the case on error. But whatever may have been the motive which induced the agreement, the complainants must be regarded as having voluntarily abandoned the case presented by their petition for a review and injunction, when they *consented* to its dismissal. If they saw fit to consider the dissolution of the injunction as having an effect which it manifestly had not, and as dismissing their petition, it was no fault of the court, whose duty it was only to *declare* the law upon a case properly presented. It was no concern or fault of the opposite party, who seems merely to have acquiesced in the wishes of the complainants; but it was their own *gratuitous* and *voluntary* act; and as such, they cannot now take advantage of it as a ground for reversing the judgment; nor can it be regarded as error proper for revision and correction here.

The argument for the complainants has proceeded upon the supposition that this agreement of the parties truly represented the facts and judgment of the court; and that the court, did, in fact, peremptorily dismiss the petition of the complainants. We cannot so regard it. We cannot recognize a right in parties litigant to attach to the action of the court. a consequence which the law forbids. Nor do we perceive that the fact that upon this agreement of the parties, it appears to have been accordingly " ordered by the court," changes the legal aspect of the case, since the record discloses that this agreement and entry did, in very truth, neither constitute nor consist with the judgment of the court. We feel constrained to regard it as unauthorized and nugatory. We cannot shut our eyes to the fact that the complainants were not prevented by any action of the court or opposite party from proceeding to establish by proof the truth of their complaint, and obtaining thereupon the relief [588] they sought. Their failure to do so was not of compulsion, but of their own volition.

Had the action of the court been, as assumed in argument, that of a peremptory judgment dismissing the cause without

the acquiescence of the complainants, and without allowing them an opportunity of being heard upon the merits of their complaint, it would, we think, have been erroneous. The authority of a very learned court has, indeed, been cited in support of the doctrine, that where an attorney of the court has confessed a judgment against a party, who has not even been served with process, and without the authority or even knowledge of the party, the judgment so confessed is not only regular but conclusive. Denton v. Noyes, 6 J. R. 295. But a different doctrine has been maintained elsewhere — and we think with much better reason — which denies that a party is *concluded* by the acts of an attorney, who assumes to act without authority (63 Ham. 518; id. 411), and which asserts that though "an authority will be presumed, when an attorney appears for a party against whom no writ has issued, yet if the defendant prove that he had no authority, his rights should not be prejudiced by the attorney's acts" (6 Litt. 186), thus recognizing the right of a party, aggrieved by an unauthorized confession of judgment, to resist and set aside the judgment so confessed, by showing that the attorney had no authority. South. 817. See also the opinion of Van Ness, J., in Denton v. Noyes, 6 J. R. 306. It is unnecessary to enter upon a more particular examination of this question, since the benefit of this more equitable doctrine was not denied the complainants below. The privilege of showing the alleged want of authority in the attorney was not refused them, but the right to do so was abandoned by them.

2. The only question then is, as to the regularity and validity of the judgment enjoined and now sought to be reversed. That judgment purports to be by consent and confession, upon agreement and compromise between the plaintiff [589] in that suit (the defendant in error) and the plaintiffs in error — the latter appearing and acting by their "attorney and agent, Joshua J. Crosby, one of the attorneys of this court." The attorney is represented as having acted both as an attorney *at law* of the court and the attorney *in fact* of the parties. The record of the judgment must be regarded as, at least, *prima facie* evidence of the truth of its contents, and not having been

successfully controverted, must be taken as true. Crosby, then, must be regarded as the attorney in fact of the parties, authorized to make the compromise and confess the judgment in question. It matters not that his power of attorney does not appear in the record. We must presume the court had the proper evidence of his authority. 6 Litt. 186. And, at the time of the rendition of this judgment, we are not aware of any law requiring an attorney confessing judgment for a party to file, of record, the evidence of his authority, though such is now the law. Acts of 1846, p. 393, sec. 116. Though "an attorney *at law*, merely as such, has no right, strictly speaking, to make a compromise for his client" (7 Cranch, 452), yet an attorney *in fact*, duly authorized, may certainly do so. And though "an attorney *at law* only represents the plaintiff or defendant in court, to do such acts as the plaintiff or defendant, if in court, might do himself" (2 Call. 498); and although "he cannot bind a person not a party to the suit" (id.), yet a person not a party to a suit may make himself a party and may bind himself; and no one will question his power to create an attorney *in fact* competent to act for and bind him, within the scope of the authority delegated, and whose acts become, in contemplation of law, the acts of his principal. There was a suit pending against one of the plaintiffs in error, and it certainly was competent for the others, with the consent of parties, to come into court and become co-defendants and confess judgment, conjointly with the defendant in the case, to whom they sustained the relation of co-sureties and co-obligors, [**590**] with a subsisting liability respecting the matter in controversy. This they did by their attorney in fact; and this, their voluntary act, we have no authority to reverse.

The judgment thus rendered by confession, upon a deliberate agreement and compromise of the whole subject of controversy, must be regarded, we think, as a waiver of all previous errors, and supersedes the necessity of considering the various questions presented in argument, as to the regularity and legality of the proceedings previous to its rendition. We are of opinion that the judgment be affirmed.