W. A. ROGERS, Ex'r, v. ROBERT McKENZIE and others.

*Attorney—Power to Receipt for Client.*

1. It is competent to the plaintiff's attorney of record to receive payment of a judgment and discharge the defendant.

2. Plaintiff's counsel, without the client's actual knowledge, associated with himself another attorney, and marked the latter's name upon the docket. The cause was in litigation for about seven years, during which time both attorneys participated equally in its conduct; *Held,* that the plaintiff was bound by the receipt of the associate attorney given in discharge of the final judgment.

(*Moye* v. *Cogdell*, 69 N. C., 93; *Morris* v. *Grier*, 76 N. C., 410, cited and approved.)

MOTION in the Cause heard at June Term, 1879, of THE SUPREME COURT.

It was agreed that the clerk of this court should ascertain and report whether William McL. McKay was one of the attorneys of the plaintiff and as such received from defendant the sum of two hundred and eighty dollars upon a judgment heretofore recovered, the amount of which has been paid to plaintiff, except said sum which the clerk was directed to retain until the determination of the question raised by the motion of defendant.

The clerk accordingly submitted a report stating that it appeared from the statements of the clerk of the superior court of Robeson under his seal of office, that the name of Mr. McKay " in his own proper hand-writing " as one of the attorneys for plaintiff, appears upon the docket of said court at fall term, 1875, and also at fall term, 1876, and that the decree in the case is in his hand-writing; but that there was no direct evidence contained in the affidavits submitted by the parties that he was employed by the plaintiff; the evidence of the plaintiff was positive that he never employed Mr. McKay in this case, and that Mr. N. A. McLean was his sole counsel therein; the evidence of Mr. McLean was that he asked Mr. McKay to appear with him generally in his cases in the supreme court; this case came to the supreme court at January term, 1871, and was decided, and the names of both the gentlemen appear as counsel for plaintiff upon the clerk's docket, and are published in the reports—65 N. C., 218; the case came to the supreme court again at June term, 1875, and was continued until June term, 1876, when a final decree was entered, and the said names appear as counsel for plantiff on the docket in the hand-writing of Mr. McLean. The clerk, therefore, finds that there is no direct or positive testimony that Mr. McKay was ever employed in the case by the plaintiff himself, either in this court or in the court below, but that it fully appears that he was associate counsel for the plaintiff, and

of record, in both courts.    The main facts are stated in the opinion of this court.

*Messrs. Hinsdale & Devereux*, for plaintiff:

A judgment in favor of a defendant in suit prosecuted by an attorney without authority would be no bar to a second action brought by direction of plaintiff.    *Frye* v. *Calhoun County*, 14 Ill., 132.    Where two innocent parties suffer by misconduct of another, loss must fall on him who enabled wrong to be committed, not on him who had no means of knowing it was a wrong.    2 Black., 372; *Bank* v. *Neal*, 22 How., 96.    Attorney must show that services were requested.    1 Par. Cont., 115.    Plaintiff not bound by conduct of unauthorized agent.    1 Salk., 88.    Judgment in a suit prosecuted without authority will be set aside if attorney is insolvent.    *Campbell* v. *Bristol*, 19 Wend., 101.    Right of party to repudiate those who apparently represent him is clear.    *Legere* v. *Richard*, 10 La., 669; 6 Litt. (Ky.,) 186; *Hess* v. *Cole*, 23 N. J., (3 Zab.), 116; 11 Ill., 488; *Allen* v. *Stone*, 10 Barb. (N. Y.), 547; *Bridgton* v. *Bennett*, 23 Me., 420. The license of attorney not of itself sufficient authority to appear for particular person.    *Cardwell* v. *Menifee*, 2 Ark., 358.    Unauthorized act not binding on plaintiff.    15 La., 569.    It seems to be settled in North Carolina that there is no presumption of authority in the attorney to represent a client arising from the exercise of such pretended authority in court.    *Alspaugh* v. *Jones*, 64 N. C., 29.

*Messrs. Battle & Mordecai* and *A. Rowland*, for defendants:

Payment of $280 by defendant to attorney of record for plaintiff was a discharge *pro tanto* of the debt.    Where attorney *appears*, his authority may be presumed by adverse party and acted upon.    Weeks on Attorneys, § 197, *et seq.; Hamilton* v. *Wright*, 37 N. Y., 502; *Rep. of Mexico* v. *DeArangoiz*, 5 Duer, 643; *Jackson* v. *Stewart*, 6 Johns., 33; *Am. Ins. Co.* v. *Oakley*, 9 Paige, 496.    Attorney by general retainer

has authority to receive money for his client, and payment to him is payment to his client. Weeks, § 232; *Moye* v. *Cogdell*, 69 N. C., 93. As to powers of attorney to bind their clients generally. *Morris* v. *Grier*, 76 N. C., 410. Plaintiff is bound, whether attorney was employed or not. *Abbott* v. *Dutton*, 44 Vt., 546; 8 Am. Rep., 39, and cases cited.

SMITH, C. J. At June term, 1876, of this court the plaintiff recovered judgment against the defendants for the sum of $462.39, whereof $270.56 was principal money and bore interest from April 1st, 1875. In June, 1876, the defendant paid to W. McL. McKay, an attorney marked on the record for the plaintiff, the sum of $30, and in October following the further sum of $250 upon the said debt. Under execution subsequently issuing, on which no credit was endorsed or mentioned, the defendant on the first day of December, 1877, paid to the sheriff of Robeson county the amount of the judgment, to-wit, $516.68, and took his receipt therefor in full of debt, interest and costs.

The funds being paid into court, the sum of $280 was directed to be retained to await the result of a motion of defendant's counsel, that that sum be returned to him and the residue paid to the plaintiff. The plaintiff claims the money, notwithstanding the payment to Mr. McKay, on the ground that he was not the plaintiff's attorney, and was without authority to represent him in the case, or to collect the money. At January term, 1878, the matter was referred to the clerk with directions to "ascertain and report whether W. McL. McKay was one of the attorneys of the plaintiff" and as such collected the sum of $280 from the defendant. At the present term the report is made, accompanied by the evidence taken, from which it appears as follows: The name of Mr. McKay, associated with that of Mr. N. A. McLean, is entered as plaintiff's attorney in the case, at Fall term, 1869, of the superior court, the action having been brought by

Mr. McLean in the spring of 1868, and has so remained during the progress of the cause until its final determination. The judgment entered at spring term, 1875, was drawn by him and signed by the presiding judge.

The cause was twice brought to this court on defendant's appeal, first to January term, 1871, when a new trial was ordered, and again to June term, 1875, and it was continued until June term, 1876, when final judgment was recovered by the plaintiff. The appearance of both the attorneys is entered on the docket of this court in both appeals and on the last appeal is in the writing of Mr. McLean, and both participated in the prosecution of the cause. There is no direct evidence of the employment of Mr. McKay, and the plaintiff testifies positively that he did not retain him, nor assent to his appearing as an attorney in the cause, until after his collection of part of the money from the defendant. Mr. McKay died before any action on the part of the plaintiff repudiating his authority to act with Mr. McLean, and we have consequently no statement from him in regard to the matter.

Although, as Mr. McKay's personal representative is not a party to this proceeding, the testimony of the plaintiff as to transactions with the deceased may not be incompetent under the rules of evidence to prove matters transpiring between him and the deceased, yet the relations of the deceased to the pending motion are so nearly like those of a party that the evidence should be accepted with great caution and carefully weighed.

But assuming the facts to be as the plaintiff deposes, the question arises, can the plaintiff under the circumstances be now heard to disavow the authority of his attorney of record, who has been openly such for seven years, in both courts, participating actively with his associate in managing the action and promoting the plaintiff's interests, and to require the defendant, acting upon the apparent authority to pay

the money a second time? The plaintiff has had the benefit of the attorney's services in securing the money now claimed, has never been present at a court when the cause was for trial, committing its conduct entirely to his admitted attorney, Mr. McLean; can this indifference and neglect to inform himself during this long period of what was going on, thereby assuring the defendant's confidence in the authority of both attorneys, as recognized by the courts, be allowed to subject the defendant to a double payment? The proposition finds no support in reason or authority. The loss should fall not upon him who has been without fault or blame, and who has throughout acted in entire good faith, but upon the plaintiff by whose negligence it has been caused. This is a sound rule of law and the dictate of justice. While we attach no blame to Mr. McLean for his failure to communicate to his client the fact that his associate was assisting him in the management of the case, yet his knowledge must in its legal consequences be imputed to the plaintiff, as if actually possessed by him. Surely the defendant had sufficient reason to believe and to act upon the belief that Mr. McKay had full and ample authority to represent the plaintiff and to exercise such power as is incident to his relation as an attorney in the cause. It would be a gross wrong now to permit the plaintiff to repudiate and disown that authority to the prejudice of the defendant, and for his own advantage.

These views seem to be warranted by the authorities to which we have been referred by the defendant's counsel: "When a respectable and responsible attorney appears for a party," say the court in *Denton* v. *Noyes*, 6 John., 296, "the court will not, ordinarily, inquire into the fact whether he was authorized or not."

Again it is said that "where no circumstances are shown calculated to raise a suspicion of fraud, or of an attempt to impose upon a party, or to abuse or pervert the process of

the court, even the mere fact of authority will not be questioned." *Rep. of Mexico* v. *De Arangoiz*, 5 Duer, 643.

The attempt of the defendant to question the authority of the attorney for the plaintiff in bringing the suit was also unavailing. It is the course of the K. B., said HOLT, C. J., (1 Salk., 86) "when an attorney takes upon himself to appear, *to look no further, but to proceed as if the attorney had sufficient authority*, and to leave the party to his action against him." *Jackson* v. *Stewart*, 6 John., 3.

Chancellor WALWORTH says in *Amer. Ins. Co.* v. *Oakley*, 9 Paige, 496: "As a general rule when a suit is commenced or defended, or any other proceeding is had therein, by one of the *regularly licensed solicitors*, it is not the practice of the court to enquire into his *authority* to appear for his supposed client. See also Weeks on Attorneys, §§ 198, 199.

A further citation of cases would seem needless, for if the existence of ample authority to act is assumed from the appearance of the attorney with the sanction of the courts, (and ordinarily it could not be questioned) all the results must follow as if actual authority had been conferred, and among them the rightfulness of the defendant's payment. It was not denied in the argument that an attorney of record may receive payment partially or in full, of the judgment recovered for his principal, and if it were, the adjudications in support of the proposition are abundant. Weeks on Attorneys, § 232, and cases there cited. The right is recognized also in *Moye* v. *Cogdell*, 69 N. C., 93, and in *Morris* v. *Grier*, 76 N. C., 410.

We have been furnished in the brief of defendant's counsel with several cases wherein a party, prejudiced by the unauthorized act of an attorney, has been permitted to deny and disprove his assumed authority to appear; but upon examination they will be found to be cases in which relief was sought against a judgment or some unfavorable action of the court consequent on such appearance, either in bring-

ing the suit or instituting the proceeding without warrant to do so, or in defending it when process had not been served and the defendant had no notice. Thus the conclusiveness of the judgment was strongly affirmed in *Shumway* v. *Stellman*, 6 Wend., 453, and in *Hess* v. *Cole*, 3 Zab., (N. J.) with two qualifications only. 1st, If it appear by the record that the defendant was not served with process, and did not appear in person or by attorney, such judgment is void. 2nd, If it appear by the record that the defendant appeared by attorney, the defendant may disprove the authority of such attorney to appear for him. See also *Bayley* v. *Buckland*, 1 Wels., Hurl. & Gordon 1, and the note appended.

The case before us is not within the principle thus declared. The plaintiff does not complain of what has been done in the conduct of the cause, nor propose to disturb the judgment of the court. He seeks to repudiate the subsequent act of one of his counsel in reducing into his possession a part of the fruits of his professional labor and skill, because it has not been faithfully accounted for. There is imputed to the defendant no misconduct or bad faith in the premises. The plaintiff and not the defendant ought to bear the loss. The money improperly collected a second time, and now in the clerk's office, must be returned to the defendant. The referee is allowed fifteen dollars for his services, which with the other costs of the motion and reference must be paid by the plaintiff, and it is so ordered.

PER CURIAM.                                        Motion allowed.