On the 12th day of October, 1894, plaintiff commenced an action against defendant in the Superior Court of Wake County, in which it alleged that the defendant wrongfully and negligently burnt its ice factory in the City of Raleigh. The defendant denied these allegations and alleged contributory negligence on the part of plaintiff. This action was tried at April Term, 1899, of said court, when the plaintiff recovered and obtained judgment for $20,000. From this judgment the defendant appealed; notice of appeal was waived in open court; appeal bond fixed at $50, which was given by defendant. And the defendant also gave a supersedeas bond for the stay of execution until the appeal should be heard in the Supreme Court.
By consent of parties, forty days was given to the appellant to make up the case on appeal and thirty days for appellee to except or make up counter case. The time allowed expired on June 15th, and defendant's case on appeal was not served or tendered until the 19th — four days after the time allowed by the agreement had expired. The plaintiff refused to accept service of defendant's case on appeal, for the reason that it had not been tendered within the time agreed upon. And while plaintiff made out a counter case, it insisted on its objection as to time and objected to the judge who presided at the trial settling the case on appeal.
The defendant after notice to plaintiff applied to the judge to (19) settle the case on appeal. But plaintiff attended and there objected to the judge's settling the case, for the reason that defendant's case on appeal had not been tendered or served in time; and upon this state of facts the judge held that he had no power to settle the case on appeal, and declined to do so, stating that he had his notes of the trial and could settle the case in a very short time, if he had the power, and that he would do so. *Page 14 
At the opening of the present term of this Court and upon notice to the plaintiff, the defendant filed its petition asking for a writ ofcertiorari, sworn to by Mr. St. John, vice-president of defendant company, and the affidavits of J. C. MacRae and W. H. Day were also filed in support of said petition.
It appears from the petition that the defendant employed J. B. Batchelor, W. H. Day and J. C. MacRae, three reputable lawyers of good standing, residents of the city of Raleigh, and practicing attorneys of the Raleigh bar, to attend to and manage said action for it; that the defendant caused the appeal to be taken, and that it gave the appeal bond required by law, as fixed by the court; that it also gave a supersedeas bond for the stay of execution; that this was all done in good faith, as it was advised that defendant had good ground for said appeal, upon which it expected to obtain a new trial; and that it never abandoned or thought of abandoning its appeal; that all three of said attorneys are insolvent and that defendant is without remedy or redress, except by the intervention of this court and the issuance of the writ of certiorari, as prayed in the petition.
The attorneys Day and MacRae admit that they are insolvent, and it is not disputed by plaintiff or any one that the attorney Batchelor is also insolvent.
(20) The said MacRae states in his affidavit that it was agreed between the attorneys that he should prepare and serve the case on appeal; and that on account of his own bad health and sickness in his family he was not able to do so within the time agreed upon. He also alleges that Mr. Batchelor was only consulting counsel, and that Mr. Day had been elected or appointed to an important public office which took a large portion of his time.
The plaintiff admits that Mr. MacRae was unwell a part of the time and that he had sickness in his family, but alleges that he was in his law office the most of the time. The plaintiff also alleges that Mr. Batchelor was more than a mere consulting counsel, that he took an active part in the trial of the case, examined some of the witnesses and argued the case to the jury. Plaintiff admits that Mr. Day has been appointed to an important public office, but it alleges that he continued his practice as an attorney; and that it was the duty of both Batchelor and Day to make up the case on appeal if MacRae could not do so.
This is a substantial statement of the facts in the case, and if the precedents of this Court and the decision of other courts do not intervene to prevent our doing so, we are of the opinion that the writ should issue. *Page 15 
The writ of certiorari is a remedial writ and should be issued in proper cases, where the petitioner has lost his remedy without fault or neglect on his part, and where he is without any other remedy. But it is an extraordinary writ, to be granted or not, in the sound discretion of the court, and will not be granted for the relief of a party who is by his own negligence in default — where he has lost his remedy by his own laches or negligence.
Negligence is admitted, but the defendant says that it was not its negligence but that of its attorneys; that it took the appeal and gave the bond; that this was all it could do; that it could not (21) make out the case on appeal; that this was the business of its attorneys, the only parties who could do so, and that it had every reason to believe, and did believe, that they would do so.
If this is so, the question presented is this: Will the negligence of defendant's attorneys be charged to defendant and prevent the issuance of the writ, or will the writ issue, notwithstanding the negligence of its attorneys?
The plaintiff contends that it was the duty of the defendant to serve the case on appeal after it had been prepared by its attorneys and that it
was guilty of negligence in not doing so. We do not assent to the truth of this proposition. If the case had been made out in time and given to the defendant to serve and it had neglected to do so, this would have been its
negligence — would have been charged to it, and the writ refused. But we understand it to be the practice of the profession (and the writer of this opinion knows that it has been the practice in that section of the State where he has practiced for thirty years) for the attorney who made out the case, or counter case on appeal, to serve the same or cause it to be served. That was what was done in this case. The attorney who prepared the case on appeal served it on the counsel of the plaintiff, and they recognized this service, without waiving the fact that it was not served in time, and proceeded to make a counter case, by way of exceptions. We have no reason to suppose that if this case on appeal had been tendered to the opposing counsel, within the time agreed upon, but what they would have treated it as a service. Of course they would have had the right to refuse to accept such service, and then the appellant would have been put to the necessity of having it served by an officer.
In Walton v. Pearson, 82 N.C. 464, the case on appeal (22) was tendered by the attorneys of the appellant to the attorneys of the appellee, and they refused to accept it, for the reason that it had not been tendered within the time. In that case this Court granted the appellant the writ of certiorari. And it does not seem to have been suggested the appellant (Walton) had been guilty of negligence in not *Page 16 
having the case on appeal served in time. But plaintiff further contends that defendant is bound for the negligence of its attorneys, and is not entitled to the writ, unless they can excuse themselves for their negligence; that it was the duty of all three of the defendant's attorneys to attend to the making out the case on appeal; that if it is admitted that McRae has excused himself (and this was not admitted) that the fact that Day had been appointed to an important public office did not excuse him, as he continued his practice and appeared for defendant on the trial of the case; and that no excuse had been offered for Batchelor except that it was alleged that he was only consulting counsel, which was denied by plaintiff.
Plaintiff contends that these facts are sufficient to defeat defendant's right to the writ, and cites Boyer v. Garner, 116 N.C. 125; Dunn v.Underwood, ibid., 525; Stanback v. Harris, 119 N.C. 107; Winborne v.Byrd, 92 N.C. 7; Griffin v. Nelson, 100 N.C. 235; Churchill v. Ins.Co., 92 N.C. 485, as authority sustaining this contention.
Dunn v. Underwood, Stanback v. Harris and Griffin v. Nelson were all cases for failure to print the record, and are not in point if it is not the duty of the appellant to serve the case on appeal, as it seems to us we have shown it is not.
Winborne v. Byrd and Churchill v. Ins. Co. are both cases where there was no appeal bond, and are not in point, for the same reason.
Boyer v. Garner was an application for a writ of certiorari to have an appeal perfected, where it had not been served within the time allowed. This application was put upon two grounds; that one of (23) the appellant's counsel had been sick and that the other was engaged in business in another county. It was resisted upon the ground that both counsel were bound, in the discharge of their duties to their client, to see that the case was made out, and the fact that one of the attorneys was on duty in another county did not excuse him. The writ was also resisted upon the ground that the appellant had given no appealbond which was shown and admitted to be true. This fact, that appellant had given no appeal bond, was a sufficient reason for refusing the writ, and seems to have been the principal reason why it was refused. But, in the opinion of the court, it is said that it was the duty of the other attorney to see that the case was made out, and the fact that he was engaged in other work outside of the county did not excuse him from his obligation to his client to do so. And if damage ensued to his client on account of his negligence, he would be liable to him for such damage.
And if it can be contended that what is said in this opinion entered into, and influenced the court in refusing a writ when it had another good ground for refusing it, the facts in that case are not the same as in this case. There, it is not even suggested that the attorneys of the *Page 17 
appellant were insolvent and that appellant was without relief, except through the writ of certiorari. Here, it is shown by the appellant (admitted by two) that all three of the attorneys of the appellant areinsolvent, and this is not controverted by the appellee; and that the appellant has no relief except by the intervention of this writ.
In Chadbourn v. Johnson, 119 N.C. 288, relief was refused where it appeared that counsel was solvent and able to answer in damages for his negligence. And it is held in University v. Lassiter, 83 N.C. on p. 42, that the Court will give relief where the attorney is (24) insolvent — the court quoting and adopting the language of Chief Justice Kent in Denton v. Noyes, 6 John., 295: "If the attorney for the defendant be not responsible or perfectly competent to answer to his assumed client, the Court will relieve the party against the judgment, for otherwise a party might be undone. I am willing to go still further and in every such case let the defendant in to a defense of the suit. To carry the interference further, beyond this point, would be forgetting that there is another party in the case equally entitled to our protection."
It has been held with very great uniformity under sec. 274 of The Code that a party not in fault — not guilty of laches himself — is entitled to relief against the neglect of his attorney, for matters which were purely within the province and duty of the attorney, and which the party himself could not do. That in such cases it was not necessary that the attorney should show excusable negligence on his part. Grill v. Vernon,65 N.C. 76; Bradford v. Coit, 77 N.C. 72.
And why the same rule should not obtain in cases like the present we do not clearly see. But it is not necessary in this case that we should declare this to be the proper rule and we do not do so.
It is argued that if we grant the writ prayed for in this case it will establish a dangerous precedent, that it will in effect destroy the statutory limitation for making and serving cases on appeal, and that the Court will be continuedly annoyed with such applications. We do not think so; the statute prescribes the legal limit and the matter ends there unless this Court, in the exercise of a sound judicial discretion, issues its remedial writ of certiorari. And no attorney who expects to hold his practice can afford to be guilty of such laches without some very good excuse. Especially so when he has to allege, or to have (25) it proved, that he is insolvent before his client can obtain such relief.
It seems to us, speaking in the language of Chief Justice Kent, that, to refuse the writ in this case, "the defendant would be undone."
The writ will issue to the clerk of the Superior Court of Wake County, commanding him to notify Judge Brown that it is the judgment of *Page 18 
this Court that he proceed at once to settle the case on appeal — observing as far as may be the rules for settling cases on appeal; and that, when the case so settled shall be filed with the clerk, he proceed at once to make and certify a full, true and perfect transcript of the record of said case on appeal, including the case so filed by Judge Brown, to this Court, that the same may be proceeded with according to law and the course and practice of this Court.
Let the writ issue as prayed for.
Certiorari.
Cited: Barber v. Justice, 138 N.C. 22; Cozart v. Assurance, 142 N.C. 524;Harrill v. R. R., 144 N.C. 545.