HENRIETTA GARDINER v. J. J. MAY, ADMINISTRATOR OF
WALTER GARDINER.

(Filed 11 October, 1916.)

**1. Appeal and Error—Judgments—Motion to Set Aside—Findings—Presumptions.**

Where the trial judge neither finds the facts nor is requested to do so, upon the motion to set aside a judgment, it will be presumed on appeal that they were sufficient to sustain his denial of the motion, and the Supreme Court will not consider affidavits for the purpose of finding the facts.

**2. Same—Consent Judgments—Burden of Proof.**

Where the court enters a judgment on its record appearing to have been by the consent of the parties, it cannot thereafter be changed or altered, or set aside, without the consent of the parties to it, unless it appears, upon proper allegation and proof and a finding of the court wherein it had been entered, that it was obtained by fraud or mutual mistake, or that consent had not in fact been given, the burden being on the party attacking the judgment to show facts which will entitle him to relief.

**3. Judgments—Consent—Effect.**

While the terms of a consent judgment are settled by the parties, such judgment has the same force and effect when accepted and sanctioned by the court, and ordered spread upon the records, as if it had been entered in regular course.

**4. Same—Findings—Presumptions—Attorney and Client—Burden of Proof.**

Where a judgment appears to have been entered by consent of the attorneys of the parties, it will be presumed, *prima facie*, that the attorneys had the necessary authority from their clients to consent thereto in their behalf, with the burden upon the party seeking to set aside the judgment to prove that no such authority actually existed. Where the judge has not stated the facts, not having been requested so to do, it will be presumed that he found such facts as would support his judgment. The general authority conferred by the relation of attorney and client discussed by WALKER, J.

**5. Same—Estates—Payment—Executors and Administrators—Remaindermen —Rights and Remedies.**

Where the trial court refused to set aside a judgment entered by the consent of the attorneys of the parties, without stating the facts upon which the refusal was based, questions presented in this Court as to the effect of payment by the administrator of the deceased of money to the life tenant under the will, without securing it to be paid to the remainderman, a boy 10 years of age, and the administrator's future liability on that account, cannot be considered. The remedies now open to the remainderman discussed by WALKER, J.

CLARK, C. J., dissenting.

GARDINER *v.* MAY.

CIVIL ACTION heard by *Lyon, J.,* at August Term, 1916, of PITT, upon a motion to set aside a judgment, entered in the above entitled cause by consent of the parties, at May Term, 1916, of the same court.

Walter Gardiner died in 1912, leaving the following will:

AYDEN, N. C., 13 August, 1909.

If I, Walter Gardiner, were to die after this date, it is my will that everything I have shall be divided equally between my wife and my mother for their lifetime, and then to go to my son, Wilbur, if he lives; but if he dies, then to my brother, Isaac. This refers to the money that will come to my estate from the Prudential Insurance Company, as well as what property I now have.                    WALTER GARDINER.

J. J. May, the defendant, qualified as administrator of Walter Gardiner. When the will was produced the said J. J. May qualified as administrator with the will annexed, and allotted to the widow of the testator a year's support. This action was then brought by the plaintiff, mother of the testator, for the half of the personal property bequeathed to her in the will. The cause came on to be heard at May Term, 1916, before *Judge Whedbee,* when the following judgment was entered:

It is now ordered, adjudged, and decreed, that the plaintiff recover of the defendant one-half of the sum of $400, being the year's provision allotted, and one-half of the sum of $75, the excess value of the two horses, to wit, the sum of $237.50, after deducting one-half of the cost of this action; and in addition thereto it is further adjudged that the plaintiff is entitled to the sum of $21.51, which has been paid into the clerk's office.

And it is further ordered that the cost of this action be taxed, one-half against the plaintiff and one-half against the defendant, and after paying said cost the defendant is hereby directed to pay over the recovery herein to the plaintiff, or her attorney.

H. W. WHEDBEE, *Judge Presiding.*

The judgment above set forth was, as appears by the record, entered by consent of the parties, through their attorneys. At August Term, 1916, defendant moved to set aside the judgment upon the ground that neither the parties, nor their attorneys for them, had the power, by consent, to enter a judgment by which the corpus of the personal estate could be turned over to the plaintiff, as owner of one-half of the life estate, without securing the remainderman against loss by any default

13—172

or delinquency on her part, from waste or otherwise. There was no allegation of fraud, and none of mistake, except the one that when defendant consented to the judgment he inadvertently overlooked the error in law, which' consisted in not providing for the security of the remainderman against loss. This motion was heard by *Judge Lyon* at August Term, 1916, when he denied the motion. No facts were found by *Judge Lyon,* and so far as appears from the record he was not requested to find and state the facts. Defendant appealed.

*Harry Skinner and L. G. Cooper for plaintiff.*
*F. M. Wooten for defendant.*

WALKER, J., after stating the case: As the judge was not requested to state the facts, we must assume that he found such facts as would support his judgment, as we do not presume that there was error in the judgment, but the contrary. *McLeod v. Gooch,* 162 N. C., 122; *Pharr v. R. R.,* 132 N. C., 418, 423, and cases therein cited. If the defendant was not alert and careful of his own interests, it was not the fault of the plaintiff, and she should not be made to suffer for his inattention. She denies that there was any mistake of law or fact, and alleges that defendant fully considered the decree after it had been submitted to him and he had time to do so, with the aid of counsel; and further, that he fully and voluntarily agreed thereto after such examination of the judgment and deliberation as to its effect. We must assume that the judge adopted these as the facts, in the absence of a specific finding to the contrary. *Pharr v. R. R., supra; Carter v. Rountree,* 109 N. C., 29; *Albertson v. Terry,* 108 N. C., 75; *Smith v. Whitten,* 117 N. C., 389. It was decided in *Carter v. Rountree, supra,* as appears by the fifth headnote, that "Upon a motion to vacate a judgment it is not required of the court to set forth its finding of the controverted facts upon the record, unless a request to that effect is made by some of the parties to the proceeding, when it would be error to refuse the request." *McLeod v. Gooch, supra.* "We do not consider affidavits for the purpose of finding the facts ourselves in motions of this sort." *Osborn v. Leach,* 133 N. C., 428.

This brings us to the next and last question in the case, as to the nature and legal effect of a consent judgment. Where parties solemnly consent that a certain judgment shall be entered on the record, it cannot be changed or altered, or set aside, without the consent of the parties to it, unless it appears, upon proper allegation and proof and a finding of the court, that it was obtained by fraud or mutual mistake, or that consent was not in fact given, which is practically the same thing, the burden being on the party attacking the judgment to show facts which

will entitle him to relief. *Edney v. Edney,* 81 N. C., 1; *Stump v. Long,* 84 N. C., 616; *Kerchner v. McEachern,* 90 N. C., 179; *Vaughan v. Gooch,* 92 N. C., 527; *Lynch v. Loftin,* 153 N. C., 270; *Simmons v. Mc-Cullin,* 163 N. C., 409; and *Harrison v. Dill,* 169 N. C., 542, where the subject is fully considered and the authorities reviewed. *Justice Dillard* said in *Edney v. Edney, supra:* "A decree by consent, as such, must stand and operate as an entirety, or be vacated altogether, unless the parties by a like consent shall agree upon and incorporate into it an alteration or modification. If a clause be stricken out," he adds, "against the will of a party, then it is no longer a consent decree, nor is it a decree of the court, for the court never made it." "There can be no doubt that a judgment entered up by the court, upon the agreement of parties, is, to say the least, as conclusive upon them as if judgment is rendered in the ordinary course of proceeding." *Pelton v. Mott,* 11 Vt., 148. While the terms are settled by the parties, the judgment has the same force and effect as if it had been entered by the court in regular course, and, in that sense, it becomes the judgment of the court by virtue of its sanction in receiving it and ordering that it be spread upon its records. *Kerchner v. McEachern,* 90 N. C., 179; *Simmons v. Mc-Cullin, supra.* This is the settled law, as shown by many of our decisions. *Vaughan v. Gooch, supra.* If this be so, defendant has no ground upon which to rest his motion. There is no finding that there was fraud or mistake, or want of authority in the attorney, and it is not denied that the judgment as entered, and in form, was by consent.

It is suggested that the burden of proof was upon the plaintiff to establish that the consent judgment was entered by the defendant's attorney with the authority of his client, or, in other words, that he was duly empowered to give the defendant's consent to the judgment. The law is to the contrary.

The general management of a suit is committed to the attorney, and he has a very extensive authority, which springs mainly from his general retainer. He has the free and full control of a case in its ordinary incidents, and as to those incidents is under no obligation to consult his client. In important matters, however, he should do so and take his client's instructions. He is likewise under obligations to render an account when desired. As the client is bound by the attorney's acts, if there is no collusion with the opposing party, the client can have redress in case of injury from the attorney alone.

The attorney may exercise his discretion in all the ordinary occurrences which take place in a cause, and may make stipulations, waive technical advantages, and generally assume the control of the action. Weeks on Attorneys at Law, p. 385 *et seq.*

A judgment entered of record, whether *in invitum* or by consent, is presumed to be regular, and an attorney who consented to it is presumed to have acted in good faith and to have had the necessary authority from his client, and not to have betrayed his confidence or to have sacrificed his right. The law does not presume that a wrong has been done. It would greatly impair the integrity of judgments and destroy the faith of the public in them if the principle were different. The authorities which support this view are very numerous, and, as the question is an important one, we will refer to a few of them.

Speaking of consent and confessed judgments, it is stated by a text-writer that "The prevailing view seems to be that the power of an attorney to confess judgment for his client is implied, though some disinclination to follow this rule has been shown. In every case, however, the record of the judgment would be prima facie evidence that the attorney who confessed it was properly authorized. It has also been held that an attorney may, by virtue of his employment, consent to a 'decree in behalf of his client." 4 Cyc., 936. As sustaining this prevailing view, he cites, among other authorities, *Hairston v. Garwood,* 123 N. C., 345. The following cases in other States hold that the record of the judgment by consent, although the consent was given by an attorney appearing in the case, is, at least, *prima facie* evidence that the attorney was authorized to do so, and acted with full authority in the premises: *Price v. Ward,* 25 N. J. L., 225; *Merrity v. Clow,* 2 Texas, 582; *Arnold v. Nye,* 23 Mich., 286; *Dobbins v. Dupree,* 39 Ga., 394; *Wilson v. Spring,* 64 Ill., 12; *Jackson v. Brown,* 82 Cal., 275; *Martin v. Judd,* 60 Ill., 78.

Anciently the right to question the attorney's authority was denied, and this is the doctrine, even now, in some courts (*Price v. Ward, supra*), and intimation to that effect was given in *Stump v. Long,* 84 N. C., 616. But we need not go that far in this case, nor express any opinion in regard to the correctness of the view that an attorney has the implied power to consent to a judgment.

In *Stump v. Long, supra,* it was said by the Court, through *Chief Justice Smith:* "It is not denied that the defendant, whether in person or by his attorney, consented to the order. Indeed, we understand his Honor's finding to go to the extent of saying that the defendant himself consented to it. But supposing it to be otherwise, and that he was only committed to it by the consent of his counsel, how then does his case stand? Every agreement of counsel entered on record and coming within the scope of his authority must be binding on the client. To hold otherwise would lend much uncertainty to many of the most important business transactions—so important and so solemnly disposed of that the parties are willing to have their agreements in regard to them enter

into and become a part of the judgments of the court, to be permanently recorded upon the dockets of the court. Neither the courts nor parties can look behind such an act on the part of an attorney to inquire into his authority or the extent and purport of the client's instructions. His acts and his admissions must be taken as those of him whom he represents." As said by *Judge Reade* in *Bradford v. Coit,* 88 N. C., 72: "The negligence of counsel or mismanagement of the case or unfaithfulness are all matters to be settled between client and counsel. No harm must be allowed to befall others on account of it."

If that be a correct statement of the law (and we do not decide that it is, as we need not do so), we are bound to treat the case as if the petitioner had been actually present and given his assent to the order as drawn. He agreed to it, as *Judge Smith* said, because his attorney did. The attorney had the authority, in this case, to appear for the defendant generally, and to act in his behalf, and must be presumed to have had power to consent to the judgment. In view of this fact, the following statement of the law, taken from *Harrill v. R. R.,* 144 N. C., 542, is quite pertinent: "The counsel who signed the case agreed in behalf of the defendant was actually its attorney at the time, and representing it in this case at the term of the court when the case was settled. He had, apparently, all the authority necessary to act in the premises, and because he failed to observe special private instructions as to the manner of defending the suit is no reason, in our opinion, under the circumstances of this case, why the judgment should be set aside, as he appeared to be clothed with general authority to act for the defendant." *Greenlee v. McDowell,* 39 N. C., 485; *Branch v. Walker,* 92 N. C., 89; *Beck v. Bellamy,* 93 N. C., 129; Weeks on Attorneys, sec. 222; *Rogers v. McKenzie,* 81 N. C., 164.

But the only question here is whether prima facie the attorney had authority, and not whether he had such as is incident to the relation of attorney and client. If there was prima facie authority, it follows, of course, that the burden of proving the contrary is upon the defendant, or the client. In *Rogers v. McKenzie, supra,* it is said by the Court: "If the existence of ample authority to act is assumed from the appearance of the attorney, with the sanction of the court (and ordinarily it could not be questioned), all the results must follow as if actual authority had been conferred, and among them the rightfulness of the defendant's payment."

It is the course of the King's Bench, said *Holt, C. J.* (1 Salk. 86), "when an attorney takes upon himself to appear, to look no further, but to proceed as if the attorney had sufficient authority, and to leave the party to his action against him if he has suffered by his default."

*Jackson v. Stewart,* 6 Johns, 3. And *Chancellor Walworth* said: "As a general rule, when a suit is commenced or defended, or any other proceeding is had therein, by one of the regularly licensed solicitors, it is not the practice of the court to inquire into his authority to appear for his supposed client, nor, of course, to stop and ascertain the extent of his authority." *Insurance Co. v. Oakley,* 9 Paige, 196; Weeks on Attorneys, secs. 198, 199.

The cases we have just cited were approved by this Court in *Rogers v. McKenzie, supra.* We also refer especially to *Morris v. Grier,* 76 N. C., 410, and *Hairston v. Garwood,* 123 N. C., 345.

As said by *Kent, C. J.,* in *Denton v. Noyes,* 6 Johns (N. Y.), 295: "If the attorney for the defendant be not responsible or perfectly competent to answer to his assumed client, the court will relieve the party against the judgment, for otherwise a party might be undone. I am willing to go still further, and, in every such case, let the defendant in to a defense of the suit. To carry the interference further beyond this point would be forgetting that there is another party in the case equally entitled to our protection." This statement of the law was quoted with approval and applied in the recent case of *Ice Co. v. R. R.,* 125 N. C., 17. See, also, *Peregoy v. Bank,* 147 N. C., 295; *Hairston v. Harwood, supra.*

It is said by the *Chief Justice* in *Westhall v. Hoyle,* 141 N. C., 337: "The consent of counsel is stated in the judgment, and is binding upon the defendants in the absence of fraud and collusion," citing *Hairston v. Garwood, supra.* In *Henry v. Hilliard,* 120 N. C., 479, it appeared that an order or judgment was entered by consent and request of counsel, who it was alleged had no authority to act as an attorney for the party he professed to represent, and the Court thus dealt with the matter on motion, as here, to set aside the judgment: "It is not denied that both parties were marked as attorneys of record for the defendants. It seems that one of them has placed himself in a condition that calls for an explanation, and the other is repudiated. The movers in this matter seem to think that these facts are of benefit to them. But we cannot see that they are. Neither of them ever was counsel for the Hilliards (opposite parties), and their action does not fall under *Gooch v. Peebles,* 105 N. C., 411, and *Arrington v. Arrington,* 116 N. C., 170. It is expressly stated in the order that it is made by consent of all the parties. We are bound by the statement as a matter of record. *Woodworking Co. v. Southwick,* 119 N. C., 611. It would be utterly destructive of all our ideas of the verity of records if they could be annulled by some one coming in after court and saying he did not agree that such an order should be made, although his attorney did."

Weeks on Attorneys at Law, after reviewing authorities, thus states the principle: "Confession of judgment by counsel representing the case, with the knowledge of the party, is sufficient, without any special authorization to that effect. In attacking a judgment obtained by confession, especially after a long lapse of time, merits must be shown by the applicant. To justify a court of equity in interfering with a judgment at law on the ground of want of authority to appear, the evidence should show clearly and unequivocally that such judgment was fraudulently and wrongfully obtained without negligence or fault on the part of the judgment defendant. The burden of proof is with the complainant, and before he is entitled to relief he must fully establish what he alleges to be true. And this cannot be done for the first time on review. With this understanding, there seems to be no doubt but that a direct action in equity lies against a judgment obtained by the unauthorized appearance of an attorney. But it should be brought with all possible speed after the judgment is rendered. It has been the practice, sometimes by motion and sometimes in chancery, to relieve parties against judgments so rendered."

*Price v. Ward,* 25 N. J. L., 225, states the ancient and modern doctrines as follows: "Whether the want of authority in the attorney can be shown in avoidance of a judgment regularly entered, after an appearance or confession of judgment by an attorney of the court in which the judgment is rendered, is a question which has undergone much discussion, and is beset with serious difficulties. The weight of the ancient authorities is against the practice. If the attorney acted without authority the judgment was held, nevertheless, to be regular, and the defendant left to his remedy against the attorney. The appearance entered by the attorney, though not lawfully authorized, was held a good appearance as to the court," citing Keble, 86, 89 ; 1 Salk., 88 ; Com. Dig., "Attorney," B, 7 ; 1 Tidd's Prac., 65 ; Cro. Jac., 695 ; *Smith v. Bowditch,* 7 Pick., 137.

In *Denton v. Noyes,* 6 Johns, 305, *Chief Justice Kent,* after an elaborate review of the authorities, said: "The rule appears to me to be settled upon too much authority to be denied, and upon too much principle to be disturbed. Without it there could be neither safety to suitors nor trust in the profession." The action in *Post v. Neafie,* 3 Caine, 26, was brought upon a decree of a court of chancery. The decree, it appeared, was founded upon an agreement between the parties, signed by their attorneys. One of the objections to a recovery, urged by the defendant's counsel, was that the agreement on which the order was made was out of the ordinary course of the power of solicitors, and that no authority appeared for making it. The objec-

tion was not noticed by any member of the court, excepting *Justice Spencer,* who said: "If this had been an action depending in a court of common law in New Jersey, and the attorney had confessed a sum of money due to the adverse party, it could never become a matter of inquiry, in a suit on the judgment, whether the attorney had acted by authority. If in this case the defendant's solicitor was unauthorized to enter into the agreement on which the decree was ultimately founded, it was examinable only in the court having original jurisdiction. It is to be intended that the solicitor acted by the direction of his client and for his benefit." Notwithstanding the weight of these authorities, "the current of recent American decisions," it is said in *Price v. Ward, supra,* "is against the rule, and in favor of admitting the authority of the attorney to be drawn in question. *Osborne v. Bank of U. S.,* 9 Wheaton, 829, and other cases. The record is prima facie evidence that the attorney who appears to the suit or confesses the judgment is duly authorized for that purpose, and, in the absence of contradictory evidence, will be held conclusive. But the authority of the attorney may be drawn in question in pleading, and may be disproved by evidence." To the same effect is *Bank v. McEwen,* 160 N. C., 414.

But as far as we need go, without indorsing all that we have quoted, is to hold that while the want of authority in the attorney may be shown, the burden of showing it is clearly on the party who attacks the consent judgment in a proper proceeding brought for that purpose.

If the parties had no authority to affect injuriously the rights of Wilbur Gardiner, son of the testator and the remainderman, he will not be prejudiced, in a legal sense, by the decree, as he is not a party to the suit. He may, perhaps, be entitled to intervene by motion in the cause or an independent civil action, as he may be advised, and assert his claim, and arrest or stay the payment of the fund to plaintiff by injunction, or restraining order, until his ultimate rights may be determined. But this matter is not before us, and we neither express, nor intimate, any opinion with regard to it, nor will we consider the question whether he has a right, as now contended by defendant, to have the fund preserved in some way for his benefit and enjoyment when the life interest has expired, as, not being a party to this proceeding, he could ask for no such relief, and, besides, the facts as to the attorney's authority have not been stated in the case.

Affirmed.

CLARK, C. J., dissenting: Walter Gardiner died in 1912, leaving an aged mother, one brother, Isaac, a wife and an infant son named Wilbur. By his will he devised his property to "be divided equally between my wife and my mother for their lifetime and then to go to my son, Wilbur,

if he lives; but if he dies, then to my brother, Isaac." The defendant May qualified as administrator, and had the year's provision allotted to the widow, $300, and $100 for the son. His final account showed that the personal estate was $1,222.24, from which the above debts paid and expenses should be deducted.

On 18 December, 1914, the plaintiff, being the mother of the deceased, brought this action against the administrator to surcharge the final account as filed. The plaintiff's counsel and defendant's counsel agreed at May Term, 1916, upon a consent judgment that the net amount due for the plaintiff's half of the estate in the hands of the defendant was $259.01. The plaintiff in July, 1916, caused execution to issue upon said judgment. On 21 August, 1916, the defendant moved to set aside the judgment, which motion being refused, he appealed to this Court.

The defendant does not deny that $259.01 is one-half the estate in his hands, and avers that he is ready to pay the same over to the plaintiff, the mother of the deceased, if the life tenant is entitled to receive the fund. But he avers that the consent judgment was merely intended to fix the amount so due, and that inasmuch as the plaintiff was only entitled to a life estate therein, and is insolvent, that should he pay the corpus of the fund over to her he may be liable at her death to pay the same amount over again to the son, who is now 10 years old, or, if he should die, to the brother of the deceased, who under the will are entitled to the corpus of the fund after the death of the life tenant. He avers his readiness to pay the fund into court, that the interest thereof may be paid to the mother during her lifetime.

The plaintiff's counsel cites authorities in our Court that, there being no trustee interposed under the terms of the will, the administrator will be discharged upon paying over the corpus of the fund to the life tenant; that since the testator has thus seen fit to trust the life tenant, the administrator is not charged with doing more than handing the fund over to her. To this it is objected that if this Court so decrees without the son or the brother of the deceased being made parties, they are not bound by such judgment, and, notwithstanding the judgment of the Court, may bring action against the administrator and subject him to payment again of the fund, if it be that he ought not to pay it over to the life tenant.

In this state of things it is eminently proper that this Court should issue notice to both the remaindermen, the son and the brother of the deceased, that they may be represented. The son, who is now 10 years of age, should be represented by a guardian *ad litem* appointed for that purpose.

The plaintiff is not bound by the prayer of his motion, which was to set aside the judgment. But he is entitled to any relief which the alle-

gations in his complaint or motion, if proven, entitle him to have. *McCulloch v. R. R.*, 146 N. C., 316; *Gilliam v. Ins. Co.*, 121 N. C., 372, and numerous other cases cited in Pell's Revisal under section 467, subsection 3. In this case the above facts are not disputed. To send the case back to the lower court with leave to the infant son to institute proceedings to protect his rights would be in vain, as he would doubtless take no action at this time, but would wait the death of his grandmother, when he can assert his claim, if it is good, against the defendant, who in such case would be compelled to pay it over to him. The administrator would thus be compelled by this Court to pay the corpus of the fund to the grandmother, the life tenant, and would be helpless to protect himself on the death of the life tenant against an action by the son or brother of the deceased, as the case may be.

Besides, such multiplicity of suits would probably eat up the entire fund, which would go to lawyers' fees and court costs, which was the result oftentimes under the old system in which a judgment was permitted at law and then an injunction was brought on the equity side of the docket to prevent the collection of the judgment, to the great vexation and expense of the parties entitled to the fund and to the great profit of lawyers and court officials, whose fees often absorbed the entire fund.

In this enlightened age we have well passed that state of things, and to prevent its repetition it has been provided by statute that even on appeal to this Court the Court can "amend by making proper parties to any case where the Court may deem it necessary and proper for the purposes of justice, and on such terms as the Court may prescribe." Revisal, 1545. This statute was passed for the very purpose of such case as is now before us, to avoid multiplicity of actions and the absorption of the fund in unnecessary counsel fees and court costs. It has been repeatedly acted on in this Court. See citations to that section in Pell's Revisal, 1545.

Justice surely requires that a simple notice should issue under Revisal, 1545, from this Court to the remaindermen, the son and brother of the deceased, that they may be heard here. In that case there will be small cost or delay; and if the court is of opinion that the administrator will be protected by paying over the fund to the life tenant, such judgment will be a protection to defendant against future litigation upon the death of the life tenant. But if the court should be of the opinion that the fund cannot be paid over to the life tenant, an order can be made directing the fund to be paid to the clerk's office and invested and interest thereon to be paid to the life tenant during her life.

The defendant and his counsel both aver that there was no authority given to said counsel to bind the administrator to pay over the fund to

the life tenant and thereby subject the administrator to payment of the fund again to the remaindermen, and that the whole object of the consent judgment was to ascertain the amount of the fund in which the plaintiff as a life tenant is interested, which was a fact that could be agreed on. The burden was upon the plaintiff to show that defendant's counsel had authority from his client to bind him by consent judgment to do what the plaintiff claims, which is a matter of law, and this authority has not been shown. The presumption is that the amount due by the defendant only was ascertained by the consent judgment. He should not be required to pay over the corpus of the fund to the life tenant unless she is entitled to receive the same as a matter of law. That was a matter of law, and not of fact, and should be adjudicated in this action, the remaindermen being made parties.

Any judgment which requires the administrator to pay over the fund to the life tenant unless the remaindermen are made parties would unjustly subject him to future litigation at the will of the remaindermen. The notice to the remaindermen could issue under Revisal, 1545, at the discretion of the court, and should be made returnable during this term on a day named, and the entire matter thus finally disposed of without appreciable costs or expense. Surely, the interests of justice and the intention of Revisal, 1545, require that this should be done. The spirit of the age as evidenced by the action of the American and State Bar Associations and by legislation in this State and everywhere else requires that we should thus simplify the administration of justice and not follow the antiquated and obsolete practice of a ruder age, the result of which was to delay justice, accumulate costs, and "lengthen simple justice into trade."