JAMES D. IPOCK, BY HIS GENERAL GUARDIAN, MRS. IDA IPOCK; MRS.
IDA IPOCK, INDIVIDUALLY AND AS GUARDIAN OF NANNIE LANE IPOCK
AND JAMES D. IPOCK, v. NORTH CAROLINA JOINT STOCK LAND
BANK OF DURHAM.

(Filed 20 June, 1934.)

1. **Guardian and Ward D c: Judges A b—Emergency judge not holding
court may not approve clerk's order authorizing guardian to mort-
gage land.**

An emergency judge has no power to approve and confirm an order
of the clerk for the sale or mortgage of lands by a guardian when such
emergency judge is not holding court in the county, the statute, C. S.,
2180, prescribing that the "judge of the court" shall approve such order,
and Art. IV, sec. 11, of the Constitution prescribing that special and
emergency judges shall have the power and authority of regular judges
in the courts which they are appointed to hold, and this result is not
affected by the provisions of N. C. Code of 1931, sec. 766(b).

2. **Guardian and Ward D c: Judgments G b—Court's approval nunc pro
tunc of clerk's order authorizing guardian to mortgage lands is up-
held.**

An executrix and guardian applied to the clerk for an order to mortgage
lands of her wards in order to pay pressing debts of the estate and
prevent imminent suit by creditors to sell the lands to make assets.
The clerk, under statutory authority, found the essential facts and duly
issued the order prayed for. Pursuant ·to the order, the guardian
executed the mortgage, obtained the loan and used the proceeds to pay
debts of the estate. Thereafter the mortgagee, upon default, foreclosed
the mortgage, bid in the property, and the guardian instituted this
action to restrain the mortgagee, as purchaser at the sale, from selling
the lands, upon the ground that the clerk's order authorizing the guardian
to mortgage the lands was void in that it had not been properly approved
by a judge of the Superior Court, C. S., 2180. There was no suggestion
of fraud, overreaching, undue advantage or other inequitable element,
or that the wards' estates had not received the full benefit of the loan.
*Held*, under the circumstances the order would doubtless have been ap-
proved by a regular judge had it been presented to him, and under the
facts the trial court had the power to approve the order *nunc pro tunc*,
although the order had been made approximately nine years before.

SCHENCK, J., took no part in the consideration or decision of this case.

CIVIL ACTION, before *Grady, J.*, at November Term, 1933, of LENOIR.

It was agreed by counsel that the trial judge could find the facts and
render judgment. The pertinent facts so found, may be summarized as
follows:

1. Samuel W. Ipock died in 1920, leaving a last will and testament
by which he devised certain land to his widow, Ida Ipock, for life, with
remainder in fee to his two children, Nannie Lane Ipock and James D.

Ipock. Ida Ipock qualified as executrix, and also as guardian of Nannie Lane Ipock and James D. Ipock. At the time of his death Samuel W. Ipock was indebted to various persons in the approximate sum of $42,000.

2. On 13 December, 1924, a special proceeding was duly instituted in the office of the clerk of the Superior Court of Lenoir County by Ida Ipock, executrix and individually and as guardian for her wards, Nannie Lane Ipock and James D. Ipock, alleging in her petition, that the outstanding indebtedness against the estate was $22,000, and that there were no personal assets with which to pay said indebtedness. It was further alleged that creditors of the estate were demanding payment and threatening to institute suit for the purpose of subjecting the lands of decedent for sale for assets, and that in, order to save the lands for her wards the guardian and executrix had negotiated a loan from the defendant in the sum of $22,000, which was to be secured by a deed of trust upon the lands described in the will of testator.

3. The clerk of the Superior Court, after considering the petition and the facts set forth therein, found as a fact that it was necessary for the plaintiffs to borrow said sum of $22,000 from the defendant and that, as said loan covered a long period of time, it was for the best interest of said minors that said loan be made and a deed of trust executed to secure the payment thereof. Thereupon, the clerk entered an order directing and empowering Ida Ipock as executrix, guardian and individually, to convey said land in trust and to complete said loan. Samuel W. Ipock, a son of the deceased, who was then of age, joined in the conveyance. This order of the clerk was approved by Honorable O. H. Allen, emergency judge of the State of North Carolina, residing at Kinston, N. C., on 13 December, 1924. Thereupon, pursuant to said special proceeding, a deed of trust was duly executed to the First National Trust Company, trustee, to secure said sum of $22,000, and the proceeds of the loan paid to the executrix and guardian.

4. On 17 February, 1926, a petition was duly filed before the clerk of the Superior Court, entitled: In the matter of Ida Ipock, guardian for Nannie Lane Ipock and James D. Ipock, and Ida Ipock, executrix of S. W. Ipock estate, *ex parte.* This petition recited the death of S. W. Ipock, the probate of his will, the qualification of the executrix, and the age of the minors. In article seven of the petition it was alleged that a special proceeding had theretofore been instituted in the Superior Court before the clerk for the purpose of borrowing from the North Carolina Joint Stock Land Bank the sum of $22,000, and that pursuant to an order made in said cause the plaintiff had borrowed from said Land Bank the said sum of $22,000 and had duly executed a deed of

trust securing the payment of said indebtedness. Said petition further demanded a partition of the lands covered by said deed of trust and that "these petitioners respectfully request the court in its order in this partition proceeding to charge the lands to be obtained by S. W. Ipock with one-third of said indebtedness to the North Carolina Joint Stock Land Bank of Durham, and to charge the land of the other petitioners to the balance thereof, and in the event that either of the parties shall fail to pay his or her proportionate part of the said indebtedness as it may mature, that in such event the other parties may have the right to pay the same, and such amounts as may be paid out for the benefit of others on said indebtedness in order to keep said mortgage from being foreclosed shall be and constitute a lien against the lands of the parties so defaulting until the same shall have been fully repaid."

5. Upon this petition an order of partition was duly made on 17 February, 1926, by the clerk of the Superior Court, and this order was duly approved by Honorable W. M. Bond, judge holding the courts of Lenoir County.

6. On 29 February, 1928, a petition was filed by the guardian in the Superior Court, alleging that annual payments on the loan of $22,000, held by the defendant, had been paid by the guardian out of the funds in her hands and from revenue derived from the farm, and she prayed that she might be permitted to use said funds for the benefit of said minors in paying said installments to the defendant. Upon this petition the clerk of the Superior Court duly made an order as prayed for and the proceeding was approved by Honorable E. H. Cranmer, judge holding the courts in Lenoir County on 2 March, 1928.

7. On 30 November, 1928, a petition was filed in the office of the clerk of the Superior Court of Lenoir County, entitled: In the matter of Nannie Lane Ipock and James D. Ipock, individually, *ex parte*. This petition alleged that the board of education of Lenoir County was desirous of purchasing a certain lot of land, but that same was covered by the mortgage to the defendant, and that the defendant had agreed to accept the purchase price and apply on its indebtedness. Whereupon, the clerk of the Superior Court entered an order on 22 November, 1928, appointing a commissioner to sell a certain lot of land to the board of education, which sale was consummated, and the net proceeds of the sale, amounting to $285.66, was duly paid to the defendant to be credited upon the indebtedness and $66.84 of the purchase price was paid to Mrs. Ida Ipock, guardian. This proceeding was duly approved by Henry A. Grady, resident judge of the Sixth Judicial District, on 23 November, 1928.

8. On 18 December, 1929, another petition was filed by the guardian, referring to the mortgage held by the defendant for $22,000, and ask-

ing for permission to execute and deliver five notes, aggregating $2,000 to J. R. Harvey and payable over a period of five years, and to secure the same by a deed of trust upon the land "subject, however, to the mortgage indebtedness due to the North Carolina Joint Stock Land Bank of Durham, North Carolina." Thereupon, the clerk of the Superior Court duly made an order as prayed for and the proceeding was approved by Henry A. Grady, resident judge of the Sixth Judicial District, on 21 December, 1929.

9. Default was made in the payment of the $22,000 indebtedness held by the defendant and on 16 January, 1932, the deed of trust was foreclosed and the lands therein described, purchased by the defendant at the sale and a deed duly executed to it for said premises. Since the purchase of said land by the defendant it undertook to sell the same and was offering the same for sale on 4 October, 1932, when the plaintiffs brought this action to restrain the sale, alleging that the defendant is not the owner of the land, but that the title to the same is now in Nannie Lane Ipock and James D. Ipock.

10. Paragraph six of the findings of fact and judgment is as follows: "While there is no allegation in the complaint in respect to said special proceeding, when the same was offered in evidence, the court inquired of counsel for the plaintiffs why the same was not binding upon them; and it was then stated to be the contention of the plaintiffs that the order of the clerk in said proceeding, was void because the same had not been signed and approved by a judge who was authorized to approve the same under the laws of North Carolina; it was further stated by counsel for the plaintiffs that they did not charge any fraud in the filing and prosecution of said proceeding, but that they earnestly contended that the court, even with the approval of a proper judge, had no right to direct a conveyance of the lands belonging to the minor petitioners under the circumstances then existing."

11. Paragraph 12 of the judgment and findings of fact, subsection (b), is as follows: "It was admitted upon the hearing that in order for the plaintiffs to prevail in this proceeding, it would be necessary to attack the special proceeding in the Superior Court of Lenoir County, under which the deed of trust to the First National Trust Company, trustee, securing said $22,000, was executed, and it was admitted that if said proceeding was valid and regular, and binding upon the plaintiffs, that they could not recover in this action.

"It was asserted that the approval of the order of the clerk by Judge Allen, an emergency judge, who was not holding the courts of Lenoir County at that time, was void and of no effect, and the court is of that opinion; it was also contended that the Superior Court had no right

or authority in law to subject the lands of the minor petitioners to a lien in favor of the Joint Stock Land Bank under said special proceeding.

"The court is of the opinion that the approval of said order by Judge O. H. Allen was a nullity; but this is an original action in the Superior Court, brought on the equity side of the docket, and the purpose of this action must, of necessity, be to attack the judgment rendered by the clerk and approved by Judge Allen. Said proceeding was instituted regularly in the Superior Court and the order of the clerk permitted said loan to be made, and it is evident that the court had jurisdiction both of the parties and of the subject-matter of the proceeding. Therefore, said order of J. T. Heath, clerk of the Superior Court, cannot be collaterally attacked in an independent action; but the only redress that plaintiffs could possibly have, if any, would be by motion in the original proceeding.

. . . "And the court is further of the opinion that the subsequent orders and decrees of the Superior Court of Lenoir County, referred to in the foregoing findings of fact, in all of which said loan and deed of trust are specifically referred to and acquiesced in, which orders were approved in one instance by Judge W. M. Bond, presiding at Kinston, N. C., and in all of the others by the resident judge of the Sixth Judicial District, that such approvals are tantamount in law and in equity to an approval, ratification and affirmance of the judgment of J. T. Heath, clerk of the Superior Court, rendered in the original proceeding, which was inadvertently approved by Honorable O. H. Allen, an emergency judge; and if such is not the law, the court is of the opinion that the defendant, being an innocent purchaser, and having loaned moneys to the plaintiffs to pay the debts of their testator, which could have been enforced against the lands in question, that said order, so approved by Judge Allen, ought now to be approved by the court, and the court does ratify and confirm the same, *nunc pro tunc;* for to act otherwise would, in the opinion of the court, permit a palpable injustice to be perpetrated upon the defendant."

From judgment dissolving the injunction upon the foregoing facts, plaintiffs appealed.

*Rouse & Rouse for plaintiffs.*
*W. G. Mordecai and Wallace & White for defendant.*

BROGDEN, J. 1. Did Judge O. H. Allen, an emergency judge, not holding court in Lenoir County, have the power on 13 December, 1924, to approve and confirm the order of the clerk, made on the same date,

authorizing and directing the guardian and executrix to borrow the sum of $22,000 from the defendant and execute and deliver a valid deed of trust securing said indebtedness?

2. Did Judge Henry A. Grady, judge presiding and holding the courts of Lenoir, have the power to approve the said order made by Heath, clerk, on 13 December, 1924, *nunc pro tunc,* on 23 November, 1933?

C. S., 2180, provides that "the judge of the court" shall approve special proceedings instituted for the sale or mortgage of lands by a guardian. For such purpose of approval, "who is the judge of the court?" Article IV, section 11, of the Constitution of North Carolina provides that "the General Assembly may by general laws provide for the selection of special or emergency judges to hold the Superior Courts of any county, or district, when the judge assigned thereto, by reason of sickness, disability, or other cause, is unable to attend and hold said court, and when no other judge is available to hold the same. Such special or emergency judges shall have the power and authority of regular judges of the Superior Courts, in the courts which they are so appointed to hold; and the General Assembly shall provide for their reasonable compensation."

Therefore, it is manifest that the power of special and emergency judges is defined and bounded by the words "in the courts which they are so appointed to hold." Consequently as Judge O. H. Allen was not holding the court in Lenoir County on 13 December, 1924, he was without authority to approve the special proceeding. This phase of the case is expressly decided in *Greene v. Stadiem,* 197 N. C., 472.

The Court is not inadvertent to C. S., 766(b), Michie's Code of 1931. If it conflicts with the Constitution, of course it amounts to nothing; but granting that it does not conflict with the Constitution, it is not determinative in the decision of this case.

The second question of law involves the power of regular judges of the Superior Court to enter a *nunc pro tunc* judgment. In the case at bar such judgment was entered approximately nine years after the original judgment made by the clerk. However, in order to work out a solution of the legal problem presented, it is necessary to recapitulate the facts.

A guardian applies to the clerk of the Superior Court of a county for an order to mortgage the land of wards in order to secure money to pay off and discharge pressing indebtedness of the estate of the wards and to eliminate imminent litigation. The clerk of the Superior Court had the power to hear the petition, find the facts, and to conclude under the circumstances then existing whether the best interest of the wards

would be subserved by the conveyance of the property for the purpose of securing money to pay debts. In the exercise of such jurisdiction the clerk found the essential facts and duly made an order authorizing and directing the guardian to borrow the money and to execute the deed of trust. Pursuant to such order the guardian received $22,000 in money from the defendant, which was actually used and expended in discharging indebtedness for which the estate of the wards was liable.

There is no challenge to the truth of any of these facts; nor is there a suggestion of fraud, overreaching, undue advantage, or even the secret presence of any inequitable element in the transaction. Manifestly, under such circumstances, the approval of a regular judge of the Superior Court as a practical matter, would have doubtless been forthcoming.

The same facts were before the chancellor, Henry A. Grady, in November, 1933. The same facts were unchallenged. Neither, at that time, was there any suggestion of fraud or hint that the estate of the minors had not received the full measure of all benefits flowing from the transaction. Under these circumstances the Court is of the opinion, and so holds that the judgment *nunc pro tunc* was within the power of a chancellor. Indeed, the case of *Powell v. Fertilizer Co.,* 205 N. C., 311, is decisive. The original record in that case discloses that Sarah Powell in 1931 as guardian, filed a petition for authority to mortgage lands of the deceased, and that no supporting affidavits were offered and no formal hearing was had. The clerk made an order permitting the conveyance and twenty-one months thereafter Judge Daniels, duly holding the court of the county, entered an order as follows: "Approved this 10 November, 1932, *nunc pro tunc* as of the 10th day of March, 1931." The Court said: "The note and deed of trust were executed by the guardian pursuant to order of the clerk of the Superior Court, and before same was approved by the judge as required by C. S., 2180, but the judge's approval was later entered *nunc pro tunc.* This cured the defect."

The question of ratification arising from the several proceedings instituted by the plaintiffs expressly recognizing the existence and validity of the deed of trust of defendant, is debated in the briefs, but the view of the law as above set forth renders a decision on that point unnecessary.

Affirmed.

SCHENCK, J., took no part in the consideration or decision of this case.