J. RAY EDMUNDSON v. LILLIAN C. EDMUNDSON.

(Filed 4 November, 1942.)

**1. Judges § 2a: Courts § 1a: Judgments § 2—**

The judge, holding the courts of a judicial district, has authority to act in all matters within the jurisdiction of the Superior Court, with the consent of the parties, by signing judgments out of term and in or out of the county and out of the district. C. S., 1438.

**2. Judgments § 1—**

While judgment by consent is a contract between the parties, put upon the record with the sanction and approval of the court, it has the same force and effect as if it had been entered by the court in regular course.

**3. Same: Divorce §§ 13, 14—**

Judgments and decrees, entered by consent of all parties, may be sustained and enforced, though they are outside the issues raised by the pleadings, if the court has general jurisdiction of the matters adjudicated. Holding that, while alimony against a husband cannot be awarded in an adversary proceeding in the absence of allegation, evidence or finding that he was the party at fault, it may be so awarded in a judgment by consent.

**4. Divorce §§ 13, 14—**

Under a consent judgment, entered in an action by a husband against his wife where no pleadings were filed, providing for certain money payments in lieu of alimony by the husband to the wife and that it shall be more than a simple judgment for debt and as binding upon plaintiff as if rendered under C. S., 1667, and, upon proper cause shown, shall subject him to such penalties as the court may require in case of contempt of its orders, the court may commit the plaintiff upon his failure to make the payments required.

DEVIN, J., dissenting.
SCHENCK, J., concurs in dissenting opinion.
SEAWELL, J., dissenting.

APPEAL by plaintiff from *Johnson, Jr., Special Judge* of the Superior Court.

Civil action for divorce from bed and board and for custody of children of the marriage, instituted in Superior Court of Wayne County on 2 September, 1939. No pleadings were filed, but a consent judgment was entered. For alleged violation of terms of this judgment, citation for contempt was issued by Harris, Judge holding courts of the Fourth Judicial District, returnable at courthouse in Lillington, North Carolina, on Tuesday, 5 May, during May Civil Term, 1942, of Superior Court of Harnett County, and, by consent of parties, heard by Johnson, Jr., Special Judge presiding, under commission duly issued in lieu of Harris, the regular judge. This appeal is from judgment on such hearing.

The record discloses these facts:

(1) After summons was issued and the time for filing complaint was extended to 22 September, 1939, a judgment, by consent of plaintiff, J. Ray Edmundson, and his counsel, Paul B. Edmundson and J. Faison Thomson, and of defendant, Lillian C. Edmundson, and her counsel, McLean & Stacy, evidenced by their several signatures thereto, was signed on 29 September, 1939, at chambers in Kinston, North Carolina, by Williams, judge resident of the Fourth Judicial District, and ordered to be recorded in the minute book in the office of the clerk of the Superior Court of Wayne County. In this judgment, after finding facts, *inter alia,* that plaintiff and defendant were married on 19 March, 1928, and lived together as man and wife until 9 June, 1939, during which period of time defendant advanced certain moneys to plaintiff which he used in his business and for which he recognized his obligation to repay, that to the union between plaintiff and defendant two children were born, that plaintiff and defendant, being unable to live together agreeably as husband and wife, have lived separate and apart since 9 June, 1939, and that differences and disagreements existing between them render it reasonably necessary to their health and happiness that they continue to live separate and apart, it is adjudged and decreed, among other things, "(a) that plaintiff and defendant shall live separate and apart from each other," (b) . . . "(c) In lieu of alimony, or other marital rights or obligations, plaintiff shall pay to defendant the sum of One Hundred Dollars ($100) per month until he has paid the total sum of Sixty-nine Hundred Eleven and No/100 Dollars ($6911), no part of which said sum is to bear interest, except any installment due hereunder after its due date shall bear interest thereon. Plaintiff shall also pay to F. Ertel Carlyle, Trustee, the sum of Fifty Dollars ($50.00) per month until the total sum of Twenty-five Hundred Dollars ($2500) has been paid said trustee, no part of which said sum is to bear interest, except any installment due hereunder after its due date shall bear interest thereon; the purpose of said payments to F. Ertel Carlyle, Trustee, being to liquidate the principal of an obligation due by plaintiff and defendant to the Mills Home and secured by a deed of trust upon the home of the defendant in Lumberton, N. C., said payments to be made on the 15th day of September, 1939, and on the 15th of each month thereafter until paid in full. The money payments provided herein shall be more than a simple judgment for debt. They shall be as effectively binding upon plaintiff as if rendered under and by virtue of the authority of section 1667, Consolidated Statutes of North Carolina, and the failure of plaintiff to make the payments, as required by this judgment, shall, upon proper cause shown to the court, subject him to such penalties as may be required by the court, in case of contempt of its orders.

"(d) This finding of fact and judgment rendered herein shall not operate as a bar to the right of either of the parties to this action to institute suit for absolute divorce upon the grounds of two years separation, if either of the parties to this action shall so elect after two years separation of the parties.

"(e) It is further, by consent, considered, ordered and adjudged that the said J. Ray Edmundson shall have the right to convey, without the joinder of his said wife, Lillian C. Edmundson, any realty now owned and possessed by the said J. Ray Edmundson of which the said J. Ray Edmundson may hereafter become seized and possessed of; and the said Lillian C. Edmundson shall have the right to convey any realty which she now owns or which she might hereafter become seized and possessed of, without the joinder and consent of the said J. Ray Edmundson; this consent judgment being a bar to any and all right of dower to which the said Lillian C. Edmundson is or might become entitled to, in any lands owned and possessed by the said J. Ray Edmundson, or in any lands to which he might hereafter own and possess; and this consent judgment shall be and is a bar to any right of curtesy to which the said J. Ray Edmundson is entitled or might hereafter become entitled to in any lands owned and possessed by the said Lillian C. Edmundson."

It is further ordered that, "This judgment shall be recorded in the Minute Book in the office of the Clerk of the Superior Court of Wayne County, North Carolina, but shall not be indexed and cross indexed in said office, nor shall the said judgment be a lien upon any lands owned and possessed by the said J. Ray Edmundson at this time or to which he might hereafter be seized and possessed of."

(2) Thereafter, on 20 March, 1942, plaintiff through his attorneys, J. Faison Thomson and Paul B. Edmundson, gave notice to defendant that motion "to modify the judgment for alimony heretofore entered in this cause," would be made before Grady, E. J., presiding at March Special Term, 1942, of Superior Court of Wayne County, at time and place named, which notice, with copy of the motion, was served upon defendant by the sheriff of Robeson County on 24 March, 1942. In this motion it is stated that plaintiff's income has been reduced from $400 per month, at the time of signing said judgment, to $168.28 per month. No hearing has been had on this motion.

(3) The defendant, answering, by affidavit, the allegations set out in the motion of plaintiff referred to in the last preceding paragraph, admits the allegations that at the time of signing said judgment, the plaintiff had an income from his work of approximately $400, but denies other material allegations, and further moved the court to adjudge plaintiff in contempt of court for his willful failure to comply with terms of said judgment.

(4) Thereafter, on 25 April, 1942, upon said affidavit of defendant, Harris, J., holding the courts of the Fourth Judicial District, cited plaintiff to appear before him "at the courthouse in Lillington, N. C., on Tuesday, May 5th, at 12 o'clock M., to show cause, if any he may have, why he should not be adjudged in contempt of court for violation of the judgment of the court entered by his Honor, Clawson L. Williams, resident judge of the Fourth Judicial District, in the above entitled cause on 29 September, 1939."

(5) Thereafter, as stipulated of record, the parties, through their respective attorneys, agreed to submit the citation for contempt in this cause to Johnson, Jr., Special Judge, who was duly commissioned to hold and preside over the May Civil Term, 1942, of Superior Court of Harnett County, North Carolina, in lieu of Harris, the regular judge holding the courts of the Fourth Judicial District, and that the same might be heard out of term time, out of the county, and out of the district.

(6) Thereafter, Johnson, Jr., Special Judge of the Superior Court, entered judgment in which it is recited that: "This cause came on for hearing before the undersigned special judge presiding at the May, 1942, Civil Term of the Superior Court of Harnett County, upon the return of the citation issued by Honorable W. C. Harris, Judge presiding over the courts of the Fourth Judicial District, commanding plaintiff, J. Ray Edmundson, to show cause, if any he may have, why he should not be adjudged in contempt of court for his alleged willful violation of the terms of the judgment entered in this cause by Honorable Clawson L. Williams, Resident judge of the Fourth Judicial District, on 29 September, 1939"; that "it was agreed by counsel representing plaintiff and defendant that the hearing upon the citation in this cause should be heard upon affidavits and briefs out of term time, out of the county, and out of the district by the undersigned Special Judge of the Superior Court"; and that, after considering the affidavits and briefs filed by and in behalf of the parties respectively, the court finds facts, substantially as hereinbefore stated, and the further specific fact that plaintiff, after making payments in compliance with terms of the said judgment of Williams, J., for twenty-eight months,—the last payment being for the month of December, 1941,—had willfully refused to pay any further amounts as he had therein agreed "unless defendant will accept $1100.00 in cash in full settlement of the money provisions of the judgment." Upon these facts it is adjudged by Johnson, Jr., Special Judge, (1) "that the willful refusal of plaintiff since December, 1941, to make any further payments on the judgment entered by Williams, J., in this cause on 29 September, 1939 (except the said conditional offer of $1100.00), is a direct contempt of this court and its orders, amounting to continuous, willful disobedience of the terms of the judgment of Williams, J., since

January, 1942," and (2) that plaintiff, "J. Ray Edmundson be confined in the common jail of Wayne County, North Carolina, until he has made payments required under said judgment, or until he is otherwise discharged according to law."

To the signing of this judgment, plaintiff, through his attorneys, J. Faison Thomson and Paul B. Edmundson, excepts and appeals to the Supreme Court and assigns same as error.

*Murray Allen for plaintiff, appellant.*
*McLean & Stacy for defendant, appellee.*

WINBORNE, J. Appellant, in challenging the correctness and validity of the judgment from which this appeal is taken, directs his attack solely upon the validity and effect of the consent judgment signed at chambers in Kinston in the Sixth Judicial District on 29 September, 1939, by Williams, Judge resident of the Fourth Judicial District.

Four contentions, stated as questions involved on this appeal, and quoted herein, are raised and debated in brief filed in this Court. We are of opinion, however, and hold that, on the present record, the judgment may not be successfully attacked on either ground.

First: "Has the resident judge jurisdiction to sign an order out of the county and out of the district in which the cause is pending at a time when, by the law of rotation, he is holding the courts of another district?" The answer is Yes, by virtue of the provisions of the act of the General Assembly, chapter 69, Public Laws 1939, amending section 1438 of Consolidated Statutes of North Carolina, 1919, which became effective on 2 March, 1939.

In this connection the Constitution of North Carolina vests the General Assembly with power to allot and distribute in such manner as it may deem best, that portion of the power and jurisdiction of the judicial department, "which does not pertain to the Supreme Court among the other courts prescribed in this Constitution, or which may be established by law." Article IV, section 12. *Bynum v. Powe,* 97 N. C., 374, 2 S. E., 170. The Constitution further provides that "the Superior Courts shall be, at all times, open for the transaction of all business within their jurisdiction, except the trials of issues of fact requiring a jury." Article IV, section 22. *Harrell v. Peebles,* 79 N. C., 26; *Shackelford v. Miller,* 91 N. C., 181; *Bynum v. Powe, supra.* In keeping with these provisions of the Constitution, the General Assembly has provided that, "The Superior Court has original jurisdiction of all civil actions whereof exclusive jurisdiction is not given to some other court." C. S., 1436. And the General Assembly has further provided, as pertains to jurisdiction, C. S., 1438, and as pertains to entering of judgments, C. S., 598,

that "in all actions where the Superior Court in vacation has jurisdiction, and all the parties unite in the proceedings, they may apply for relief to the Superior Court in vacation, or in term time, at their election." Under this authority it is well settled that under the system of rotation prescribed by the Constitution, Article IV, section 11, the judge holding the courts of a judicial district has jurisdiction to act in all matters within the jurisdiction of the Superior Court, and by consent of parties, such judge may, out of term and in or out of the county and out of the district, sign a judgment affecting any matter within such jurisdiction. *Hervey v. Edmunds,* 68 N. C., 243; *Harrell v. Peebles, supra; Shackelford v. Miller, supra; McDowell v. McDowell,* 92 N. C., 227; *Coates v. Wilkes,* 94 N. C., 174; *Bynum v. Powe, supra; Fertilizer Co. v. Taylor,* 112 N. C., 141, 17 S. E., 69; *Benbow v. Moore,* 114 N. C., 263, 19 S. E., 156; *Bank v. Gilmer,* 118 N. C., 668, 24 S. E., 423; *Hawkins v. Cedar Works,* 122 N. C., 87, 30 S. E., 13; *Westhall v. Hoyle,* 141 N. C., 337, 53 S. E., 863; *Clark v. Machine Co.,* 150 N. C., 372, 64 S. E., 178; *Killian v. Chair Co.,* 202 N. C., 23, 161 S. E., 546; and numerous other cases.

And the General Assembly, in the Act of 2 March, 1939, chapter 69, Public Laws 1939, amending C. S., 1438, provided that "The resident judge of the judicial district and the judge regularly presiding over the courts of the district shall have concurrent jurisdiction in all matters and proceedings wherein the Superior Court has jurisdiction out of term." The judgment in question was entered after the statute became effective.

Second: "Can alimony against the husband be awarded when there is no allegation, evidence or finding that he was the party at fault?" In an adversary proceeding the answer would be "No," but where, as here, the parties acted in agreement and the judgment was entered by consent, the answer is "Yes." *Holloway v. Durham,* 176 N. C., 550, 97 S. E., 486; *Keen v. Parker,* 217 N. C., 378, 8 S. E. (2d), 209.

In the *Keen case, supra,* this Court said: "It is generally held that provisions in judgments and decrees entered by consent of all the parties may be sustained and enforced, though they are outside the issues raised by the pleadings, if the court has general jurisdiction of the matters adjudicated. Annotations, 86 A. L. R., 84. And, in this connection, this quotation from opinion by *Hoke, J.,* in *Holloway v. Durham, supra,* is appropriate: 'The decisions of this State have gone far in approval of the principle that a judgment by consent is but a contract between the parties put upon the record with the sanction and approval of the court and would seem to uphold the position that such a judgment may be entered and given effect as to any matters of which the court has general

jurisdiction, and this with or without regard to the pleadings,' citing cases." See also *Hervey v. Edmunds, supra.*

Third: "If and when neither plaintiff nor defendant has filed a complaint, answer, or reply, is a judgment by consent more than an agreement between the parties approved by the court?" Yes, "While the terms are settled by the parties, the judgment has the same force and effect as if it had been entered by the court in regular course, and, in that sense, it became the judgment of the court by virtue of its sanction in receiving it and ordering that it be spread upon its records." *Gardiner v. May,* 172 N. C., 192, 89 S. E., 955. It is there also stated that "this is settled law as shown by many of our decisions." See also *Board of Education v. Comrs.,* 192 N. C., 274, 134 S. E., 852.

Fourth: "Can the consent judgment in this case be enforced against plaintiff by attachment for contempt?" Yes, it may be. See *Gardiner v. May, supra; Dyer v. Dyer,* 212 N. C., 620, 194 S. E., 278.

In the judgment in the instant case plaintiff is ordered to pay to, and for defendant definite amounts of money in monthly installments. And from other provisions it is clear that, though the phrase "in lieu of alimony, or other marital rights or obligations" is used, subsistence for the wife was in contemplation of the parties, a liability which plaintiff recognized, within the meaning of C. S., 1667. The language is not uncertain. It is agreed that: "The money payments provided herein shall be more than a simple judgment for debt. They shall be as effectively binding upon plaintiff as if rendered under and by virtue of the authority of section 1667, Consolidated Statutes of North Carolina, and the failure of plaintiff to make the payments, as required by this judgment, shall, upon proper cause shown to the court, subject him to such penalties as may be required by the court, in case of contempt of its orders."

This agreement, sanctioned by the court, and ordered recorded in the minute book in the office of the clerk of the Superior Court of Wayne County, has the same force and effect as if it had been entered by the court in regular course. *Gardiner v. May, supra.* In the *Dyer case, supra,* the husband was held in contempt for willful failure to comply with the provisions of a consent judgment requiring him to pay to his wife a certain monthly allowance for subsistence. And on subsequent appeal in the same case, reported in 213 N. C., 634, 197 S. E., 157, relief was denied to the husband upon finding by the court that his continued refusal to pay alimony was willful.

In the present case the situation of the husband is not altered by the fact that the wife was willing that a part of subsistence provided should be applied to relieve her home from a deed of trust, securing an obligation due by them. A house in which to live may reasonably come

within the meaning of subsistence. The payment of the lien on her home was in part the means to attain the same end.

The judgment below is

Affirmed.

DEVIN, J., dissenting: I am unable to agree that the judgment below should be affirmed on this record.

In the beginning of the judgment appealed from it is recited that "This cause came on for hearing before the undersigned Special Judge presiding at May 1942 Civil Term of the Superior Court of Harnett County." But later in the same paragraph it is stated that "It was agreed by counsel representing plaintiff and defendant that the hearing upon the citation in this cause should be heard upon affidavits and briefs out of term time, out of the County and out of the District by the undersigned Special Judge of the Superior Court." A stipulation to the same effect appears in the record. The special judge resides in Sampson County, in the 6th Judicial District. It also appears that the affidavits, printed in the record, upon which the judgment appealed from was based, were verified subsequent to the May Civil Term of Harnett Superior Court and some as late as August, 1942. Thus the record is strongly persuasive that the hearing was had and the judgment rendered after the term of court for which the special judge had been commissioned had expired, and out of the county where the cause was pending. While it is not affirmatively so stated in the record, the clear implication to this effect is presented by the record itself, and I do not think it can be overlooked. Was the agreement referred to in the stipulation carried out, and as a matter of fact was the hearing had and judgment rendered otherwise than at the term of court for which the special judge was commissioned?

The majority opinion proceeds upon the view that the recitation in the preamble of the judgment that the cause came on for hearing at the May Civil Term of the court (for which the special judge was commissioned) is conclusive, in the absence of exception or assignment of error based upon contrary showing.

True, no reference is made to the matter in the brief. The only exception is to the judgment. Counsel, having entered into an agreement, doubtless felt personally bound by it, and have not sought to evade it. But what is the duty of the court when, upon appeal from the judgment, the entire record is before it and a fatal defect, rendering the judgment void, is apparent? Should not the court in the performance of its high duty of administering justice according to law, and in the exercise of its constitutional power of supervising and controlling the proceedings of courts below, in view of the condition of the record apparently indicating

a jurisdictional error, at least inform itself (if there be uncertainty) as to a fact upon which would depend the validity of the judgment?

If, as a matter of fact, the hearing was had and the judgment rendered out of term and after the commission of the special judge had expired, and at a time when he was no longer clothed with power and authority to exercise judicial functions in Harnett County, then the judgment would be void with the result that a citizen has been deprived of his liberty and committed to jail under a purported judgment rendered in excess of the authority given the judge by the Constitution and laws of the State. Under those circumstances the court should act *ex mero motu* upon that fact being made to appear in a case properly brought before it. *Branch v. Houston,* 44 N. C., 85; *S. v. King, ante,* 137 (141). For it is well settled that where power to hear and judicially determine a matter is wanting, jurisdiction cannot be conferred by consent. "Jurisdiction, not given by law, may not be conferred on a court or commission, as such, by waiver or consent of parties." *Dependents of Thompson v. Funeral Home,* 205 N. C., 801, 172 S. E., 500; *Reaves v. Mill Co.,* 216 N. C., 462, 5 S. E. (2d), 305. This was not an arbitration, but a judicial determination of a litigated cause properly constituted in the Superior Court.

What are the powers of special judges under the Constitution and laws of North Carolina? The constitutional provision for the appointment of special judges is set out in Art. IV, sec. 11, of the Constitution, from which I quote as follows: "The General Assembly may by general laws provide for the selection of special or emergency judges to hold the Superior Courts of any county, or district, when the judge assigned thereto, by reason of sickness, disability, or other cause, is unable to attend and hold said court, and when no other judge is available to hold the same. Such special or emergency judges shall have the power and authority of regular judges of the Superior Courts, in the courts which they are so appointed to hold."

Thereafter the General Assembly, in the exercise of the power thus conferred, enacted ch. 51, Public Laws 1941 (amending previous statutes on the subject), section 5 of which I quote as follows: "To the end that such special judges shall have the fullest power and authority sanctioned by Article four, section eleven, of the Constitution of North Carolina, such judges are hereby vested, in the courts which they are duly appointed to hold, with the same power and authority in all matters whatsoever that regular judges holding the same courts would have. A special judge duly assigned to hold the court of a particular county shall have during said term of court, in open court and in chambers, the same power and authority of a regular judge in all matters whatsoever arising

in that judicial district that could properly be heard or determined by a regular judge holding the same term of court."

Naturally the General Assembly could not grant power and authority to special judges beyond that fixed by the Constitution. *Greene v. Stadiem,* 197 N. C., 472, 149 S. E., 685. Thus while the power and authority of special judges is that of regular judges of the Superior Court, these judicial powers, under the Constitution and the statute, are to be exercised by special judges only "in the counties which they are so appointed to hold." The power conferred is subject to that definite limitation. As was said by *Brogden, J.,* in *Ipock v. Bank,* 206 N. C., 791 (796), 175 S. E., 127, "Therefore it is manifest that the power of Special and Emergency Judges is defined and bounded by the words 'in the courts which they are so appointed to hold.' " Consequently, it has been held that a special judge must have a separate commission from the Governor for each term of court he is appointed to hold, and that the commission properly should recite the constitutional ground and necessity for the appointment. *Dunn v. Taylor,* 186 N. C., 254, 119 S. E., 495. The uniform decisions of this Court, interpreting these provisions of the Constitution and laws of the State, are to the effect that a special judge holding a term of court under commission from the Governor, has all the power and authority that a regular judge of the Superior Court could have, both as to the trial of causes, the hearing of motions, and the issuance of all orders, writs and judgments, in the court which he is appointed to hold, but that, when the term ends and he leaves the county, he becomes *functus officio,* and his authority as a judge in that particular county ceases, as much so as if his term of office had ended. *Ipock v. Bank,* 206 N. C., 791, 175 S. E., 127; *Reid v. Reid,* 199 N. C., 740, 155 S. E., 719; *Greene v. Stadiem,* 197 N. C., 472, 149 S. E., 685; *Dunn v. Taylor,* 186 N. C., 254, 119 S. E., 495.

In *Reid v. Reid, supra,* the action was for divorce, pending in Anson County. The wife, who was the defendant, filed motion for alimony *pendente lite.* The motion was continued to be heard before Judge Stack, resident judge in Union County, and was again continued, at the instance of the plaintiff, to be heard before Special Judge Thomas L. Johnson in Chambers at Albemarle in Stanly County. Johnson was then holding court under commission from the Governor appointing him to hold a specific term of court in Stanly County. Judge Johnson heard the matter and signed an order awarding the defendant alimony *pendente lite,* and the plaintiff, the husband, appealed. Here, it was held the order was void, and the cause was remanded. The Court said: "The fact that the defendant's motion was made returnable in Stanly County at the instance of the plaintiff, or even by consent, can have no bearing on the power of the court to hear the matter. Jurisdiction, withheld by

law, may not be conferred on a court, as such, by waiver or consent of the parties (citing authorities). The order, therefore, will be stricken out as the Special Judge was without authority to sign the same under the commission held by him at the time, and the cause will be remanded for further proceeding not inconsistent with the rights of the parties."

In the case at bar Special Judge Johnson's commission empowered him to hold the May Civil Term of Harnett Superior Court, a one-week term beginning 4 May, 1942. That commission expired at the end of the term. The judgment does not purport to have been rendered in any court for which Judge Johnson held commission other than the May Term, 1942, of Harnett.

In view of the condition of the record, indicating lack of jurisdiction and power on the part of the special judge to render the judgment appealed from, before affirming the indefinite imprisonment of the plaintiff thereunder, I think the Court should at least obtain, by proper means, information as to these jurisdictional facts, and that, in the event it is disclosed that the judgment was void as beyond the power of the special judge, the cause should be remanded for further proceedings according to law.

It may be that the plaintiff is guilty of willful contempt and disobedience of the orders of court, and subject to the coercive penalties of the law, but I think the determination should be by a tribunal with full power and authority, under the Constitution and laws of the State, to so adjudge, and to punish him therefor.

SCHENCK, J., concurs in this opinion.

SEAWELL, J., dissenting: I fully concur in the dissenting opinion of *Mr. Justice Devin,* and in apprehension that silence on the point may be considered as asquiescence, I wish to express my views on another phase of the case—the holding of the Court that the judgment in this case may be enforced by a proceeding for civil contempt.

The suit began as an action for divorce *a mensa et thoro,* if we may judge by the statement of the plaintiff when procuring time to file complaint. No pleadings were ever filed; but a consent judgment was entered in the case, which in its preamble and upon its face bases the award made to the *feme* defendant upon a debt which the husband owed her involved in the terms of a separation agreement.

Paragraph (c) of the judgment requires that the plaintiff shall pay to the defendant the sum of $6,911 in installments of $100 per month, which apparently under the preamble of the judgment is to repay the defendant for moneys advanced, and to pay $2,500 in installments of $50 a month to F. Ertel Carlyle, Trustee, to discharge certain obligations due

by both plaintiff and defendant upon the home of the defendant in Lumberton, N. C. The concluding part of the section of the judgment is significant: "The money payments provided herein shall be more than a simple judgment for debt. They shall be as effectively binding upon plaintiff as if rendered under and by virtue of the authority of section 1667, Consolidated Statutes of North Carolina, and the failure of plaintiff to make the payments, as required by this judgment, shall, upon proper cause shown to the court, subject him to such penalties as may be required by the court, in case of contempt of its orders."

The judgment, I think, plainly recognizes that it is in reality a judgment for debt, but attempts to bring it within the provisions of section 1667 of the Consolidated Statutes and the penalties provided thereunder, so that it may be enforced by civil contempt. I do not attribute this device, which I regard as exceeding the power of the court, to the learned judge who signed the consent judgment.

Section 1667 of the Consolidated Statutes provides for alimony without divorce upon a suit instituted by the wife, and that statute is applicable only to independent suits for alimony. *Reeves v. Reeves,* 82 N. C., 349, 352; *Skittletharpe v. Skittletharpe,* 130 N. C., 72, 40 S. E., 851; *Dawson v. Dawson,* 211 N. C., 453, 190 S. E., 749; *Silver v. Silver,* 220 N. C., 191, 16 S. E. (2d), 834; *Shore v. Shore,* 220 N. C., 802, 18 S. E. (2d), 353; *Pollard v. Pollard,* 221 N. C., 47.

It is clear, then, that in an action for divorce from bed and board, which either the wife or the husband may bring, there can be no award of alimony without the divorce to which it is incident, and we think it is equally clear that the court is without power to change the character of the proceeding into one brought by the wife under C. S., 1667, for alimony without divorce. But passing this, the plain tenor of the judgment is to compel the payment of the obligations which had already been assumed both by the husband to the wife and by the wife and the husband which are recognized as debts, and to make such payments *in lieu of alimony* or other marital rights or obligations. "In lieu of alimony" means in place of alimony, instead of alimony, and, *in totidem verbis,* excludes alimony. The court cannot thereafter by its mere fiat change the character of these obligations into alimony—nor, indeed, does it purport to do so; nor can it invest a judgment with a legal character that it does not have under the law by a simple fiat "that the money payments provided herein shall be more than a simple judgment for debt"—a difficulty which obviously occurred to the parties when the judgment was framed. It protests too much. In so far as the consent of the plaintiff was concerned, he may just as well have agreed that a default in the payment of the debt should subject him to punishment under any criminal statute which may be found in the books.

Certainly the defendant consented to the judgment, but the Constitution which forbids imprisonment for debt is not made solely for the protection of the individual, but to remove a blight from our civilization, and it does not intend that any man shall mortgage his liberty to secure a debt.

The order should be dismissed.